# ALABAMA SJIS CASE DETAIL

**PREPARED FOR: ALICIA HARRISON**


alacourt.com

County: **11**   Case Number: **CV-2020-900287.00**   Court Action:

Style: **RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL**

Real Time

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 5/27/2020 | 7:40 AM | FILE | FILED THIS DATE: 05/27/2020          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | ASSJ | ASSIGNED TO JUDGE: DEBRA JONES          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | SCAN | CASE SCANNED STATUS SET TO:          (AV01) | AJA |
| 5/27/2020 | 7:40 AM | C001 | C001 PARTY ADDED: HOWELL RICKY LEVERAL          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C001 | LISTED AS ATTORNEY FOR C001: GODWIN LEWIS CHRISTO | AJA |
| 5/27/2020 | 7:40 AM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C001 | LISTED AS ATTORNEY FOR C001: BUTLER JAMES DWIGHT | AJA |
| 5/27/2020 | 7:40 AM | C002 | LISTED AS ATTORNEY FOR C002: GODWIN LEWIS CHRISTO | AJA |
| 5/27/2020 | 7:40 AM | C002 | C002 PARTY ADDED: HOWELL HEATHER          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C002 | LISTED AS ATTORNEY FOR C002: BUTLER JAMES DWIGHT | AJA |
| 5/27/2020 | 7:40 AM | C002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C002 | C002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C003 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C003 | LISTED AS ATTORNEY FOR C003: GODWIN LEWIS CHRISTO | AJA |
| 5/27/2020 | 7:40 AM | C003 | LISTED AS ATTORNEY FOR C003: BUTLER JAMES DWIGHT | AJA |
| 5/27/2020 | 7:40 AM | C003 | C003 PARTY ADDED: LEWIS WENDY          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | C003 | C003 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/27/2020 | 7:40 AM | D001 | CERT MAIL-FIL ISSUED: 05/27/2020 TO D001   (AV02) | AJA |
| 5/27/2020 | 7:40 AM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D001 | D001 PARTY ADDED: CITY OF OXFORD, ALABAMA   (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D002 | D002 PARTY ADDED: OXFORD EMERGENCY MEDICAL SERVICE | AJA |
| 5/27/2020 | 7:41 AM | D002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D002 | CERT MAIL-FIL ISSUED: 05/27/2020 TO D002   (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 5/27/2020 | 7:41 AM | ECOMP | COMPLAINT E-FILED. | GOD015 |
| 5/28/2020 | 9:56 AM | SCAN | CASE SCANNED STATUS SET TO: Y          (AV01) | VIS |
| 6/5/2020 | 2:35 PM | D002 | SERVICE OF CERTIFIED MAI ON 06/05/2020 FOR D002 | VIS |
| 6/5/2020 | 2:37 PM | ESERC | SERVICE RETURN | VIS |
| 6/5/2020 | 2:37 PM | ---- | SCANNED - SERVICE RETURN - TRANSMITTAL - E-NOTICE TRANSMITTALS | |
| 6/8/2020 | 11:50 AM | D001 | SERVICE OF CERTIFIED MAI ON 06/08/2020 FOR D001 | CHC |
| 6/8/2020 | 11:53 AM | ESERC | SERVICE RETURN | CHC |
| 7/1/2020 | 8:57 AM | EMDT | D001-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | STU013 |
| 7/1/2020 | 9:18 AM | D001 | LISTED AS ATTORNEY FOR D001: STUBBS CHARLES DAVID | AJA |

| Date | Time | Code | Description | Party |
|------|------|------|-------------|-------|
| 7/1/2020 | 9:20 AM | EMOT | D001-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | VIS |
| 7/1/2020 | 9:33 AM | JEORDE | ORDER GENERATED FOR MOTN TO DIS. PURS. TO RULE 12(B) - RENDERED & ENTERED: 7/1/2020 9:33:12 AM - ORDER | J |
| 7/1/2020 | 9:33 AM | ---- | SCANNED - ORDER - TRANSMITTAL - E-NOTICE TRANSMITTALS | |
| 7/1/2020 | 10:46 AM | DAT2 | FOR: MOTION TO DISMISS ON 07/16/2020 @ 1030A(AV01) | VIS |
| 7/1/2020 | 12:56 PM | D002 | LISTED AS ATTORNEY FOR D002: ODOM JASON CLAUDE | AJA |
| 7/1/2020 | 12:57 PM | ENOTA | NOTICE OF APPEARANCE E-FILED | ODO015 |
| 7/5/2020 | 6:10 PM | EMOT | D002-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | ODO015 |
| 7/6/2020 | 8:21 AM | EMOT | D002-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | VIS |
| 7/6/2020 | 10:16 AM | D002 | LISTED AS ATTORNEY FOR D002: UMBACH ARNOLD WILLIA | AJA |
| 7/6/2020 | 10:17 AM | ENOTA | NOTICE OF APPEARANCE E-FILED | UMB002 |
| 7/9/2020 | 10:50 AM | JEORDE | ORDER GENERATED FOR MOTN TO DIS. PURS. TO RULE 12(B) - RENDERED & ENTERED: 7/9/2020 10:50:48 AM - ORDER | J |
| 7/10/2020 | 10:23 AM | EMOT | C001-C002-C003-OTHER - RECUSAL FILED. | GOD015 |
| 7/10/2020 | 10:37 AM | EMOT | C001-C002-C003-OTHER /DOCKETED | VIS |
| 7/13/2020 | 10:25 AM | JEORDE | ORDER GENERATED FOR OTHER - RECUSAL - RENDERED & ENTERED: 7/13/2020 10:25:41 AM - ORDER | J |
| 7/13/2020 | 12:53 PM | EMOT | D001-RESPONSE TO MOTION FILED. | STU013 |
| 7/13/2020 | 1:39 PM | DAT3 | FOR: RECUSAL & TRANSFER ON 07/16/2020 @ 1030A | VIS |
| 7/13/2020 | 2:28 PM | EMOT | D001-OTHER /DOCKETED | VIS |
| 7/14/2020 | 11:52 AM | EMOT | C001-C002-C003-RESPONSE TO MOTION FILED. | GOD015 |
| 7/14/2020 | 12:01 PM | EMOT | C001-C002-C003-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | VIS |
| 7/14/2020 | 12:28 PM | EMOT | D002-RESPONSE TO MOTION FILED. | ODO015 |
| 7/14/2020 | 1:35 PM | EMOT | D002-OTHER /DOCKETED | VIS |
| 7/15/2020 | 8:13 AM | EMOT | C001-C002-C003-CONTINUE FILED. | GOD015 |
| 7/15/2020 | 8:48 AM | EMOT | C001-C002-C003-CONTINUE /DOCKETED | VIS |
| 7/15/2020 | 9:30 AM | JEORDE | ORDER GENERATED FOR CONTINUE - RENDERED & ENTERED: 7/15/2020 9:30:13 AM - ORDER | J |
| 7/15/2020 | 9:30 AM | ---- | SCANNED - ORDER - TRANSMITTAL - E-NOTICE TRANSMITTALS | |
| 8/5/2020 | 4:49 PM | EMOT | C001-C002-C003-SUPPLEMENT FILED. | GOD015 |
| 8/6/2020 | 8:23 AM | EMOT | C001-C002-C003-CONTINUE /DOCKETEO | VIS |
| 1/29/2021 | 2:48 PM | EAMEN | AMENDED COMPLAINT E-FILED. | GOD015 |
| 2/3/2021 | 9:12 AM | EMOT | D002-WITHDRAW FILED. | ODO015 |
| 2/3/2021 | 9:16 AM | EMOT | D002-WITHDRAW /DOCKETED | CHC |
| 2/4/2021 | 4:58 PM | EDISC | NOTICE OF DISCOVERY E-FILED. | GOD015 |
| 2/5/2021 | 1:46 PM | EMOT | D001-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | STU013 |
| 2/5/2021 | 2:03 PM | EMOT | D001-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | CHC |
| 2/8/2021 | 4:17 PM | EMOT | D002-EXTENSION OF TIME FILED. | UMB002 |
| 2/8/2021 | 4:23 PM | EMOT | D002-EXTENSION OF TIME /DOCKETED | CHC |
| 2/9/2021 | 9:40 AM | ESCAN | SCAN - FILED 2/5/2021 - RETURN ON SERVICE - SERVED | VIS |
| 2/9/2021 | 11:57 AM | ESCAN | SCAN - FILED 2/8/2021 - RETURN ON SERVICE - SERVED | VIS |
| 2/18/2021 | 9:44 AM | JEORDE | ORDER GENERATED FOR WITHDRAW - RENDERED & ENTERED: 2/16/2021 9:44:38 AM - ORDER | J |
| 2/18/2021 | 9:46 AM | JEORDE | ORDER GENERATED FOR EXTENSION OF TIME - RENDERED & ENTERED: 2/18/2021 9:46:20 AM - ORDER | J |
| 2/18/2021 | 9:47 AM | JEORDE | ORDER GENERATED FOR MOTN TO DIS. PURS. TO RULE 12(B) - RENDERED & ENTERED: 2/18/2021 9:47:29 AM - ORDER | J |
| 2/18/2021 | 10:21 AM | D002 | LISTED AS ATTORNEY FOR D002: UMBACH ARNOLD WILLIA | CHC |
| 2/18/2021 | 10:21 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE        (AV02) | CHC |
| 3/15/2021 | 9:18 AM | EMOT | D002-OTHER - NOTICE OF BANKRUPTCY AND SUGGESTION OF STAY FILED. | UMB002 |
| 3/15/2021 | 9:28 AM | EMOT | D002-OTHER /DOCKETED | VIS |
| 3/17/2021 | 11:51 AM | JEMOT | D002-OTHER /NO ACTION | J |
| 3/31/2021 | 12:23 PM | ENOTA | NOTICE OF APPEARANCE E-FILED | LON089 |
| 3/31/2021 | 12:24 PM | D002 | LISTED AS ATTORNEY FOR D002: LONG SUSAN KNIGHT | AJA |
| 3/31/2021 | 12:24 PM | EANSW | D002 - SUGGESTION OF BANK E-FILED. | LON089 |
| 3/31/2021 | 12:25 PM | D002 | ANSWER OF SUGG BANKRUPT ON 03/31/2021 FOR D002 | AJA |
| 3/31/2021 | 12:27 PM | EMOT | D002-WITHDRAW FILED. | LON089 |
| 3/31/2021 | 12:59 PM | EMOT | D002-WITHDRAW /DOCKETED | CHC |

| Date | Time | Code | Description | Party |
|---|---|---|---|---|
| 4/1/2021 | 9:00 AM | JEMOT | D002-WITHDRAW /NO ACTION | J |
| 6/22/2021 | 4:09 PM | EMOT | C001-C002-C003-OTHER - MOTION TO LIFT STAY FILED. | GOD015 |
| 6/22/2021 | 4:12 PM | EMOT | C001-C002-C003-OTHER /DOCKETED | VIS |
| 6/30/2021 | 9:39 AM | JEORDE | ORDER GENERATED FOR OTHER - MOTION TO LIFT STAY - RENDERED & ENTERED: 6/30/2021 9:39:14 AM - ORDER GRANTING MOTION TO LIFT STAY | J |
| 6/30/2021 | 9:40 AM | ---- | SCANNED - ORDER - TRANSMITTAL - E-NOTICE TRANSMITTALS | |
| 7/7/2021 | 3:24 PM | EMOT | D002-WITHDRAW FILED. | UMB002 |
| 7/7/2021 | 3:36 PM | EMOT | D002-WITHDRAW /DOCKETED | VIS |
| 7/11/2021 | 3:18 PM | JEORDE | ORDER GENERATED FOR WITHDRAW - RENDERED & ENTERED: 7/11/2021 3:18:02 PM - ORDER | J |
| 7/11/2021 | 3:19 PM | ---- | SCANNED - ORDER - TRANSMITTAL - E-NOTICE TRANSMITTALS | |
| 7/12/2021 | 8:21 AM | D002 | LISTED AS ATTORNEY FOR D002: LONG SUSAN KNIGHT | VIS |
| 8/13/2021 | 9:34 AM | ESUBP | SUBPOENA FOR BLUE CROSS BLUE SHIELD E-FILED BY C002 - HOWELL HEATHER | GOD015 |
| 8/13/2021 | 9:34 AM | W001 | ADDED: BLUE CROSS BLUE SHIELD        (AW21) | AJA |
| 8/13/2021 | 9:34 AM | W001 | ISSUED: 08132021 - PROCESS SERVER; BLUE CROSS BLUE | AJA |
| 8/13/2021 | 9:45 AM | W002 | ADDED: RETIREMENT SYSTEMS OF ALABAM        (AW21) | AJA |
| 8/13/2021 | 9:45 AM | W002 | ISSUED: 08132021 - CERT MAIL-FILR; RETIREMENT SYST | AJA |
| 8/13/2021 | 9:45 AM | ESUBP | SUBPOENA FOR RETIREMENT SYSTEMS OF ALABAMA E-FILED BY C002 - HOWELL HEATHER | GOD015 |
| 8/13/2021 | 3:46 PM | EDISC | NOTICE OF DISCOVERY E-FILED. | GOD015 |
| 8/16/2021 | 4:38 PM | EDISC | NOTICE OF DISCOVERY E-FILED. | GOD015 |
| 8/23/2021 | 2:33 PM | ENOTA | NOTICE OF APPEARANCE E-FILED | UMB002 |
| 8/23/2021 | 2:33 PM | D002 | LISTED AS ATTORNEY FOR D002: UMBACH ARNOLD WILLIA | AJA |
| 8/27/2021 | 11:30 AM | W002 | SERVED: 08192021 - CERTIFIED MAIL; RETIREMENT SYST | ERM |
| 8/27/2021 | 11:32 AM | ESCAN | SCAN - FILED 8/19/2021 - SUBPOENA SERVED | ERM |
| 10/4/2021 | 11:29 AM | ESUBP | SUBPOENA FOR MDA PROFESSIONAL GROUP E-FILED BY C001 - HOWELL RICKY LEVERAL | GOD015 |
| 10/4/2021 | 11:29 AM | W003 | ADDED: MDA PROFESSIONAL GROUP        (AW21) | AJA |
| 10/4/2021 | 11:29 AM | W003 | ISSUED: 10042021 - CERT MAIL-FILR; MDA PROFESSIONA | AJA |
| 10/11/2021 | 11:26 AM | ESUBP | SUBPOENA FOR RETIREMENT SYSTEMS OF ALABAMA E-FILED BY C001 - HOWELL RICKY LEVERAL | GOD015 |
| 10/11/2021 | 11:26 AM | W004 | ADDED: RETIREMENT SYSTEMS OF ALABAM        (AW21) | AJA |
| 10/11/2021 | 11:26 AM | W004 | ISSUED: 10112021 - CERT MAIL-FILR; RETIREMENT SYST | AJA |
| 10/11/2021 | 11:35 AM | ESUBP | SUBPOENA FOR RETIREMENT SYSTEMS OF ALABAMA E-FILED BY C003 - LEWIS WENDY | GOD015 |
| 10/11/2021 | 11:35 AM | W005 | ADDED: RETIREMENT SYSTEMS OF ALABAM        (AW21) | AJA |
| 10/11/2021 | 11:35 AM | W005 | ISSUED: 10112021 - CERT MAIL-FILR; RETIREMENT SYST | AJA |
| 10/15/2021 | 12:05 PM | W003 | SERVED: 10142021 - CERTIFIED MAIL; MDA PROFESSIONA | ERM |
| 10/15/2021 | 12:06 PM | ESCAN | SCAN - FILED 10/14/2021 - SUBPOENA SERVED | ERM |
| 2/10/2022 | 12:49 PM | EMOT | D002-MOTN TO DIS. PURS. TO RULE 12(B) FILED. | MED011 |
| 2/10/2022 | 1:12 PM | D002 | LISTED AS ATTORNEY FOR D002: HARRISON ALICIA MEDD | AJA |
| 2/10/2022 | 1:13 PM | EMOT | D002-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | VIS |
| 2/10/2022 | 3:00 PM | EMOT | D002-SUPPLEMENT FILED. | MED011 |
| 2/10/2022 | 3:46 PM | EMOT | D002-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | ERM |
| 2/17/2022 | 2:17 PM | JEORDE | ORDER GENERATED FOR MOTN TO DIS. PURS. TO RULE 12(B) - RENDERED & ENTERED: 2/17/2022 2:17:31 PM - ORDER | |
| 2/17/2022 | 2:37 PM | DAT2 | FOR: MOTION TO DISMISS ON 03/10/2022 @ 0230P(AV01) | VIS |
| 3/8/2022 | 11:54 AM | EAMEN | AMENDED COMPLAINT E-FILED. | GOD015 |
| 3/8/2022 | 2:14 PM | EMOT | C001-C002-C003-RESPONSE TO MOTION FILED. | GOD015 |
| 3/8/2022 | 2:48 PM | EMOT | C001-C002-C003-MOTN TO DIS. PURS. TO RULE 12(B) /DOCKETED | VIS |
| 3/9/2022 | 2:26 PM | EMOT | D002-OTHER - JOINT MOTION TO CANCEL HEARING FILED. | MED011 |
| 3/9/2022 | 2:30 PM | EMOT | D002-OTHER /DOCKETED | BED |
| 3/9/2022 | 2:37 PM | JEORDE | ORDER GENERATED FOR OTHER - JOINT MOTION TO CANCEL HEARING - RENDERED & ENTERED: 3/9/2022 2:37:15 PM - ORDER | |
| 3/9/2022 | 2:39 PM | ---- | SCANNED - ORDER - TRANSMITTAL - E-NOTICE TRANSMITTALS | |

 **END OF THE REPORT**

ELECTRONICALLY FILED
5/27/2020 7:41 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93　Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca:<br>11<br><br>Date of Filing:<br>05/27/2020 | <br><br><br>Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA
### RICKY LEVERAL HOWELL ET AL v. CITY OF OXFORD, ALABAMA ET AL

**First Plaintiff:** ☐ Business ☑ Individual　　**First Defendant:** ☑ Business ☐ Individual
　　　　　　☐ Government ☐ Other　　　　　　　　　　☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☑ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**　F ☑ INITIAL FILING　　　　A ☐ APPEAL FROM　　　　　O ☐ OTHER
　　　　　　　　　　　　　　　　　　　　　　DISTRICT COURT

　　　　　　R ☐ REMANDED　　　　　　　T ☐ TRANSFERRED FROM
　　　　　　　　　　　　　　　　　　　　　　OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**　☑ YES ☐ NO　　Note: Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**　☑ MONETARY AWARD REQUESTED　☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

| GOD015 | 5/27/2020 7:41:58 AM | /s/ L. CHRIS GODWIN |
|---|---|---|
| | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**　☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**　☐ YES ☐ NO



ELECTRONICALLY FILED
5/27/2020 7:41 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | |
|---|---|
| RICKY HOWELL, HEATHER HOWELL, AND WENDY LEWIS )<br><br>Plaintiffs, )<br><br>vs. )<br><br><br>OXFORD EMERGENCY MEDICAL SERVICES, INC, and CITY OF OXFORD, ALABAMA, And Fictitious Party Defendants A through D, )<br><br>Defendants. ) | CASE NO: _____ |

"A," whether singular or plural, being the correct legal name of any of the named Defendants; "B," whether singular or plural, being the person, firm, association, corporation or other entity that defrauded or acted in conspiracy with one or more defendants to defraud the Plaintiffs, Citizens of Oxford, Alabama, Customers, Entities or Individuals of money, property and services; "C," whether singular or plural, being that person, firm, association, corporation or other entity who or which are the predecessors or successors in interest to any of the above named or described Defendants, and "D" being those individuals or entities who acted individually or in concert with others, who conspired or coordinated in some other manner to harm, injury or damage the Plaintiffs as set forth in the allegations in this Complaint. Plaintiff avers that the identities of all the foregoing fictitious party Defendants are otherwise unknown to Plaintiff at the time, or if their names are known to Plaintiff at the time, their identity as proper party Defendants is not known to Plaintiff at the time, but whose true and correct names will be substituted by amendment when the aforesaid lacking information is ascertained.

### VERIFIED COMPLAINT

COMES NOW the Plaintiffs Ricky Howell, Heather Howell and Wendy Lewis, and files their Complaint for Damages against Defendants Oxford Emergency Medical Services, Inc., the City of Oxford, Alabama, and fictitious party defendants A through D. In support thereof, the Plaintiffs aver the following:

### PARTIES, JURISDICTION AND VENUE

1. Ricky Howell is an adult resident of Talladega County, Alabama who is over the age of nineteen.

2. Heather Howell is an adult resident of Talladega County, Alabama who is over the age of nineteen.

3. Wendy Lewis is an adult resident of Calhoun County, Alabama who is over the age of nineteen.

4. Oxford Emergency Medical Services, Inc. is a domestic non-profit corporation organized under the laws of State of Alabama

5. City of Oxford, Alabama is a municipal corporation organized under the laws of the State of Alabama.

6. Pursuant to Alabama Code 11-27-45 Notices of Claims were served by Plaintiffs upon the City of Oxford, Alabama on or around March 25, 2020.

## GENERAL FACTS

7. Plaintiffs adopt and re-allege the preceding allegations one (1) through six (6) as if fully set forth herein.

8. Plaintiffs were employed by Defendant Oxford Emergency Medical Services, Inc., until all were terminated without cause on or around January 22, 2020.

9. That Plaintiff Ricky Howell was the Director of Oxford Emergency Medical Services, Inc. at time of his termination and had twenty-six (26) years of service with the company with no reprimands in that period of twenty-six (26) years.

10. Plaintiff Heather Howell is the daughter of Ricky Howell and was terminated without

cause and because of her relation to Ricky Howell.

11. That Plaintiff Wendy Lewis is the ex-wife of Ricky Howell and was terminated without cause and because of her relation to Ricky Howell.

12. Defendant Oxford Emergency Medical Services, Inc. conducted a meeting in violation of the Alabama Open Meetings Act on or around January 21, 2020 by failing to post proper notice at least seven (7) days in advance of the meeting.

13. Defendant Oxford Emergency Medical Services, Inc. voted to terminate the Plaintiffs in the January 21, 2020 meeting that was not properly noticed.

14. That Defendant Oxford Emergency Medical Services, Inc. failed to deliberate in open and failed to provide public notice of the meeting at a place and time consistent with the Alabama Open Meetings Act.

15. Defendant City of Oxford, Alabama coerced the Board of Directors of the Oxford Emergency Medical Services, Inc. to terminate the Plaintiffs or the City of Oxford, Alabama would cut off funding to Oxford Emergency Medical Services, Inc.

16. That the grounds for terminating the Plaintiffs were contrived, false, libelous, slanderous, and defamatory; and were done in a conspiracy among Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D.

17. That the Board of Directors of Oxford Emergency Medical Services, Inc. had only been empowered less than 24 hours before voting to terminate the Plaintiffs.

18. That four (4) members of the Board of Directors of Oxford Emergency Medical Services Board; who had all recently resigned, knew the allegations against the Plaintiffs were

fictitious and false.

19. Those four (4) members refused to vote to terminate the Plaintiffs and instead resigned from the Board.

20. Once the new board was impaneled, they fired the Plaintiffs and then Defendant City of Oxford, Alabama agreed to fund Oxford Emergency Medical Services, Inc.

21. That subsequent to their terminations, Plaintiffs have discovered that the Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D have engaged in a pattern and common scheme of libeling and slandering the Plaintiffs.

22. That Defendants have engaged in a conspiracy of false and fraudulent billing for ambulance services, that certain friends and relatives of the Defendants were provided free ambulance services.

23. That in a conspiracy and in a fraudulent manner, ambulatory patients have been ambulance transported by Defendant Oxford Emergency Medical Services, Inc. in violation of Medicare rules and regulations.

24. That certain friends and relatives have been provided free ambulance services at the direction of Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D.

25. That Defendants' failure to bill or submit claims for ambulance services has been unlawful, and has been detrimental to Oxford Emergency Medical Services, Inc. And the Citizens of Calhoun County, Alabama.

26. That Defendants have made false statements about the Plaintiffs and published same.

27. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D withheld payroll taxes from the Plaintiffs' paychecks but failed to pay the withheld taxes to the United States Treasury and or the Internal Revenue Service.

28. That after their terminations the Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D failed to pay the Plaintiffs their accrued sick time.

29. That after their terminations, Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D failed to pay the Plaintiffs their accrued vacation time.

30. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D withheld funds from Plaintiffs' pay checks but failed to pay Blue Cross Blue Shield of Alabama the employer as well as the employee portions of the health insurance premiums.

31. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D have failed to pay Blue Cross Blue Shield of Alabama health insurance premiums for numerous employees in addition to the Plaintiffs to this cause.

32. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D withheld funds from Plaintiffs' pay checks but failed to pay AFLAC insurance, life insurance and disability insurance.

33. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D withheld Alabama State Retirement System premiums at Tier 1 rate but only paid on Tier 2 rates to Alabama State Retirement System for Plaintiffs Heather Howell.

34. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D failed to pay in 401(k) contributions withheld from Plaintiffs' pay checks.

35. That Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D withheld Social Security insurance taxes from Plaintiffs' pay checks beginning January 1, 2018 and up until their termination from Plaintiffs' pay checks but then failed to pay the money to Social Security Administration.

36. That the allegations of misconduct made by Defendants against Ricky Howell were false.

37. That the allegations of misconduct made by Defendants against Heather Howell were false.

38. That the allegations of misconduct made by Defendants against Wendy Lewis were false.

## COUNT ONE

## FRAUD AND MISREPRESENTATION

39. Plaintiffs adopt and re-allege the preceding allegations one (1) through thirty-eight (38) as if fully set forth herein.

40. Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and

Fictitious Defendants A-D knew the statements and representations they made about the Plaintiffs were false.

41. Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D false statements were intentional and, in an attempt, to harm or injure the Plaintiffs.

42. That Plaintiffs have been injured as a result of Defendants' Fraud and Misrepresentation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for an amount to be determined by the fact finder against Defendants jointly and severally for actual and compensatory damages, punitive damages as a jury may assess, attorney fees due to Defendants' intentional acts; plus interest and costs of court, as well as any further relief allowable under Alabama law.

## COUNT TWO

## WANTONNESS

43.     Plaintiff incorporates by reference all of the preceding allegations one (1) through (42) of Plaintiff claim as if more fully set out herein.

44.     Defendants acts were willful, wanton, and oppressive conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for an amount to be determined by the fact finder against Defendants jointly and severally for actual and compensatory damages, punitive damages as a jury may assess, attorney fees due to Defendants' intentional and wanton acts; plus interest and costs of court, as well as any further relief allowable under Alabama law.

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45.     Plaintiff incorporates by reference all of the preceding allegations one (1) through forty-four (44) of Plaintiff claim as if more fully set out herein.

46.     The actions of the Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D were extreme and outrageous conduct and done intentionally or wantonly so as to cause the Plaintiff shame, humiliation and extreme and severe emotional distress such that no reasonable person could be expected to endure.

47.     The Plaintiffs have suffered extreme and disabling emotional distress due to the outrage upon their sensitivities and emotions, including physical afflictions visited upon the Plaintiff and their family members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for an amount to be determined by the fact finder against Defendants jointly and severally for actual and compensatory damages, punitive damages as a jury may assess, attorney fees due to Defendants' intentional and wanton acts; plus interest and costs of court, as well as any further relief allowable under Alabama law.

## COUNT FOUR

## BREACH OF FIDUCIARY DUTY

48.     Plaintiff incorporates by reference all of the preceding allegations one (1) through (47) of Plaintiffs Complaint as if more fully set out herein.

49.     Defendants stood in a fiduciary relationship with the Plaintiffs. As such, Defendants had a duty to safeguard and appropriately disburse funds withheld from their pay checks or payable by the employer for the employee.

50.     Defendants breached this duty taking the employee money and not paying it to the appropriate entities for insurance, health insurance, social security, retirement, and other benefits the Plaintiffs were supposed to receive from Defendants.

51.     As a direct and proximate cause of the Defendants' breaches, the Plaintiffs have sustained damages in the form of loss of funds, loss of benefits, loss of coverage and loss of peace of mind.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for an amount to be determined by the fact finder against Defendants jointly and severally for actual and compensatory damages, punitive damages as a jury may assess, attorney fees due to Defendants' intentional and wanton acts; plus interest and costs of court, as well as any further relief allowable under Alabama law.

## COUNT FIVE

## CONVERSION

52. Plaintiff incorporates by reference all of the preceding allegations one (1) through fifty-two (52) of Plaintiffs claim as if more fully set out herein.

53. Commencing on or around January 1, 2018 and up until Plaintiffs were terminated, Defendants converted the employer withheld funds from Plaintiffs' paychecks and deprived Plaintiffs of their use, benefit and value.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs demand judgment against the Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D for an amount to be determined by the fact finder against Defendants jointly and severally for actual and compensatory damages, punitive damages as a jury may assess, attorney fees due to Defendants'

intentional and wanton acts; plus interest and costs of court, as well as any further relief allowable under Alabama law.

## COUNT VI

### VIOLATIONS OF ALABAMA OPEN MEETINGS ACT

54. Plaintiff incorporates by reference all of the preceding allegations one (1) through fifty-three (53) of Plaintiffs claim as if more fully set out herein.

55. The Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D committed violations of the Alabama Open Meetings Act, Code of Alabama 1975, 36-25A-1 through 36-25A-11 as alleged in this Complaint and Plaintiffs pray for an Order awarding remedies, fines, penalties and attorney's fees pursuant to the Open Meetings Act. Plaintiffs further pray for an Order invalidating all decisions made by the Defendant Oxford Emergency Medical Service, Inc.'s in those unlawful meeting or meetings.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs demands judgment against the Defendants City of Oxford, Alabama; Oxford Emergency Medical Services, Inc.; and Fictitious Defendants A-D for an amount to be determined by the fact finder against Defendants jointly and severally for and all remedies, penalties, fines, attorneys fees and costs of court as well as any further relief allowable under Alabama law.

STATE OF ALABAMA
CALHOUN COUNTY

  I, the undersigned authority, a Notary Public in and for said state and county, hereby certify that Ricky Howell, whose name is signed to the foregoing instrument and who is known to me, acknowledge before me on this day that, being duly informed of the contents of said instrument, she executed the same voluntarily on the day same bears date.

  Given under my hand and seal this 26th day of May , 20 20 .

Notary Public   11-10-23
My Commission Expires

Ricky Howell

STATE OF ALABAMA
CALHOUN COUNTY

  I, the undersigned authority, a Notary Public in and for said state and county, hereby certify that Heather Howell, whose name is signed to the foregoing instrument and who is known to me, acknowledge before me on this day that, being duly informed of the contents of said instrument, she executed the same voluntarily on the day same bears date.

  Given under my hand and seal this 26th day of May , 20 20 .

Notary Public
My Commission Expires: 11/10/23

Heather Howell

STATE OF ALABAMA
CALHOUN COUNTY

    I, the undersigned authority, a Notary Public in and for said state and county, hereby certify that Wendy Lewis, whose name is signed to the foregoing instrument and who is known to me, acknowledge before me on this day that, being duly informed of the contents of said instrument, she executed the same voluntarily on the day same bears date.

    Given under my hand and seal this 26th day of May, 20 20.

_Lewis C. Godwin_
Notary Public
My Commission Expires: 11/10/23

_Wendy Lewis_

Wendy Lewis

    Respectfully submitted,

s./ Lewis C. Godwin
Lewis C. Godwin (GOD-015)
Attorney for the Plaintiffs
Shabani & Associates, P.C.
5500 Southlake Park, Suite 200
Birmingham, AL 35244
PHONE 205-823-1223  FAX 205-823-1967
E-Mail: godwin.shabanilaw@gmail.com

s./ James D. Butler
James D. Butler (BUT-026)
Attorney for the Plaintiffs
Law Office of James Butler
4985 McAdory School Road
McCalla, AL 35011-3440
PHONE 205-434-2124
E-Mail: jamesbutlerlaw47@gmail.com

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>11-CV-2020-900287.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA
### RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL

**NOTICE TO:** CITY OF OXFORD, ALABAMA, P.O. BOX 3383, OXFORD, AL 36203

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
L. CHRIS GODWIN

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 5500 Southlake Park, Suite 200, Hoover, AL 35244

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of RICKY LEVERAL HOWELL
*[Name(s)]*
pursuant to the Alabama Rules of the Civil Procedure.

| 05/27/2020 | /s/ KIM MCCARSON | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.  /s/ L. CHRIS GODWIN

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*  *(Name of County)*

Alabama on _____.

*(Date)*

_____     _____     _____
*(Address of Server)*

_____     _____     _____
*(Type of Process Server)*  *(Server's Signature)*

_____     _____
*(Server's Printed Name)*  *(Phone Number of Server)*

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA
### RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL

**NOTICE TO:** OXFORD EMERGENCY MEDICAL SERVICES, INC., #12 US HWY NO 78 WEST, OXFORD, AL 36203

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), L. CHRIS GODWIN

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 5500 Southlake Park, Suite 200, Hoover, AL 35244

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of RICKY LEVERAL HOWELL

*[Name(s)]*

pursuant to the Alabama Rules of the Civil Procedure.

| 05/27/2020 | /s/ KIM MCCARSON | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.  /s/ L. CHRIS GODWIN

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to

in _____ County,

*(Name of Person Served)*  *(Name of County)*

Alabama on _____ .

*(Date)*

_____
*(Address of Server)*

_____  _____
*(Type of Process Server)*  *(Server's Signature)*

_____
*(Server's Printed Name)*  *(Phone Number of Server)*

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Oxford EMS
P.O. Box 3178
Oxford AL 36203



COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Patrick Barker              JUN 05 2020

KIM McCARSON, CLERK

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 4912 9032 6987 13

2. Article Number (Transfer from service label)
7019 0700 0002 1406 6595

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 4912 9032 6987 13

**United States Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box●

Circuit Clerk, Calhoun County
25 West 11th Street
Anniston AL 36201

11-CV-2020-900287



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was served on 6/5/2020

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

**Corresponding To**

CERTIFIED MAIL

ADDRESS WRITTEN ON CERTIFIED MAIL RETURN DOESN'T MATCH THE ADDRESS GIVEN AT TIME
OF FILING COMPLAINT

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was served on 6/5/2020

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

**Corresponding To**

CERTIFIED MAIL

ADDRESS WRITTEN ON CERTIFIED MAIL RETURN DOESN'T MATCH THE ADDRESS GIVEN AT TIME
OF FILING COMPLAINT

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

City of Oxford AL
P.O. Box 3383
Anniston AL 36203



9590 9402 5622 9308 3034 85

2. Article Number (Transfer from service label)

7018 1130 0000 0763 0724

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Sgt. Bryan 72
☑ Agent
☐ Addressee

B. Received by (Printed Name)

Sgt. Bryan

C. Date of Delivery

JUN 0 8 2020

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

338

KIM McCARSON, CLERK



3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 5622 9308 3034 85

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Circuit Clerk
25 West 11th Street
Anniston AL 36201

11-CV-2020-900287



**AlaFile E-Notice**

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was served on 6/8/2020

**D001 CITY OF OXFORD, ALABAMA**

**Corresponding To**

CERTIFIED MAIL

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was served on 6/8/2020

**D001 CITY OF OXFORD, ALABAMA**

**Corresponding To**

CERTIFIED MAIL

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov

| **STATE OF ALABAMA** | Revised 3/5/08 | **Cas** | ELECTRONICALLY FILED |
|---|---|---|---|

ELECTRONICALLY FILED
7/1/2020 8:57 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

**STATE OF ALABAMA**    Revised 3/5/08    **Cas**

Unified Judicial System

11-CALHOUN    ☐ **District Court**    ☑ **Circuit Court**    CV2

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL

## CIVIL MOTION COVER SHEET

*Name of Filing Party:* D001 - CITY OF OXFORD, ALABAMA

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*

CHARLES DAVID STUBBS

P.O. BOX 2023

ANNISTON, AL 36202

*Attorney Bar No.:* STU013

☐ Oral Arguments Requested

## TYPE OF MOTION

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
|  | ☐ Change of Venue/Transfer |
|  | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
|  | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
|  | ☐ Judgment as a Matter of Law (during Trial) |
|  | ☐ Disburse Funds |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Extension of Time |
| ☐ Motion to Intervene ($297.00) | ☐ In Limine |
| ☐ Other _____ | ☐ Joinder |
| pursuant to Rule _____ ($50.00) | ☐ More Definite Statement |
|  | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ New Trial |
|  | ☐ Objection of Exemptions Claimed |
|  | ☐ Pendente Lite |
| ☐ Local Court Costs $  0 | ☐ Plaintiff's Motion to Dismiss |
|  | ☐ Preliminary Injunction |
|  | ☐ Protective Order |
|  | ☐ Quash |
|  | ☐ Release from Stay of Execution |
|  | ☐ Sanctions |
|  | ☐ Sever |
|  | ☐ Special Practice in Alabama |
|  | ☐ Stay |
|  | ☐ Strike |
|  | ☐ Supplement to Pending Motion |
|  | ☐ Vacate or Modify |
|  | ☐ Withdraw |
|  | ☐ Other _____ |
|  | pursuant to Rule _____ (Subject to Filing Fee) |

Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐

Date:
7/1/2020 8:57:30 AM

Signature of Attorney or Party
/s/ CHARLES DAVID STUBBS

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
7/1/2020 8:57 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY HOWELL, HEATHER HOWELL,  )
and WENDY LEWIS,  )
    )
    Plaintiffs,  )
    )
v.  )    **CASE NUMBER: 11-CV-2020-900287**
    )
OXFORD EMERGENCY MEDICAL  )
SERVICES, INC., and CITY OF OXFORD,  )
    )
    Defendants.  )

## <u>MOTION TO DISMISS BY CITY OF OXFORD</u>

Comes now the Defendant, City of Oxford, Alabama, and, pursuant to Ala. R. Civ. P. 12(b)(6)., respectfully moves this Court to dismiss all claims against it, for failure to state a claim upon which relief can be granted. As grounds for the requested relief, the City states as follows:

This case arises out of a complaint filed by three former employees of Oxford Emergency Medical Services, Inc. Although not a model of clarity, the complaint seems to assert, as to the City: (1) a claim for fraud and misrepresentation, which appears to be based on the allegation that "Defendants" collectively used "false, libelous, slanderous and defamatory" grounds for terminating Plaintiffs' employment, (see Doc. 2, at ¶¶ 16, 40-42); (2) a claim for wantonness (see Doc. 2, at ¶ 44); (3) a claim for intentional infliction of emotional distress (see Doc. 2, at ¶¶ 46-47); (4) a claim for breach of fiduciary duty, which appears to be based on allegations that "Defendants" collectively breached a fiduciary duty to "appropriately disburse" funds withheld from Plaintiffs' paychecks, (see Doc. 2, at ¶¶ 49-51); (5) a claim for conversion based on the same allegations, (see Doc. 2, at ¶ 53); and (6) a claim for violation of the Open Meetings Act (see Doc.

2, at ¶ 55).[1] All of these attempted claims against the City fail, for several reasons discussed in turn below.[2]

The appropriate standard of review of a Motion to Dismiss under Rule 12(b)(6) of the Alabama Rules of Civil Procedure "is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [her] to relief."[3] Dismissal for failure to state a claim is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.[4]

First, all intentional torts that are attempted to be asserted against the City must be dismissed because the City has municipal immunity for such alleged torts.[5] Moreover, to the extent

---

[1] The complaint also asserts, in various paragraphs in the section labeled "General Facts," that there was an alleged "fraud" and "conspiracy" among Defendants, but no cause of action is asserted for such alleged conspiracy. (See, e.g., Doc. 2, at ¶¶ 16, 22.) Even if such a cause of action were asserted, it would fail. As discussed below, Plaintiffs do not have any viable underlying claim or claims against the City. "[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." Jones v. BP Oil Co., 632 So. 2d 435, 439 (Ala. 1993) (citing Allied Supply Co. v. Brown, 585 So. 2d 33, 36 (Ala. 1991), and Webb v. Renfrow, 453 So. 2d 724, 727 (Ala. 1984)). "Conspiracy is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action." Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So. 2d 1280, 1290 (Ala. 1993). See also O'Dell v. State ex rel. Patterson, 270 Ala. 236, 240, 117 So. 2d 164, 168 (1959) ("Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed."); Freeman v. Holyfield, 179 So. 3d 101, 106 (Ala. 2015) (conspiracy claim, being dependent on a claim that was time-barred by statute of limitations, was properly dismissed).

[2] In making this motion, the City is taking the allegations of the Complaint as pleaded. Nothing herein is intended or should be construed to be the City's acceptance of the facts as true, or as a waiver of any defense or other matter whatsoever. The City also adopts by reference, as if fully set forth herein, any argument asserted in support of dismissal by any co-defendant, to the extent such arguments may also apply to the City.

[3] Culp v. Econ. Mobile Homes, Inc., 895 So. 2d 857 (Ala. 2004).

[4] Donoghue v. Am. Nat. Ins. Co., 838 So. 2d 1032 (Ala. 2002).

[5] See, e.g., Ex parte City of Bessemer, 142 So. 3d 543, 549–50 (Ala. 2013) (finding no exception to the general rule of municipal immunity when the plaintiffs' attempted claim was in the nature of an intentional tort); Ex Parte Labbe, 156 So. 3d 368, 372–73 (Ala. 2014) (a city cannot be liable for wanton conduct); Town of Loxley v. Coleman, 720 So. 2d 907, 909 (Ala. 1998) (same); Hilliard v. City of Huntsville, 585 So. 2d 889, 892 (Ala. 1991) (same); Hollis v. City of Brighton, 885 So. 2d 135, 141–42 (Ala. 2004) (same); Scott v. City of Heflin, No. 1:14-CV-02484-HNJ, 2017 WL 5490932, at *12 (N.D. Ala. June 29, 2017), report and recommendation adopted, No. 1:14-CV-02484-VEH, 2017 WL 5451711 (N.D. Ala. Nov. 14,

that Plaintiffs seek the recovery of punitive damages based on any alleged claim against the City, it is extraordinarily well settled that they may not recover such damages. Ala. Code § 6-11-26 provides, in pertinent part, that "[p]unitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof....."[6] Oxford, is, of course, a municipality. Consequently, this Court should dismiss the attempted claims against the City for fraud and misrepresentation, wantonness, intentional infliction of emotional distress, and conversion, on the basis of municipal immunity, and should also dismiss any and all claims for punitive damages, on the basis of Ala. Code § 6-11-26.

Second, the claim for fraud and misrepresentation is due to be dismissed for additional and alternative reasons. At the threshold, despite the complaint's continuing references to "Defendants" in the collective, it is by no means clear that this claim is actually directed to the City rather than to the co-defendant Oxford Emergency Medical Services, Inc. However, assuming for purposes of argument only that this particular claim is directed to the City, then any alleged false, libelous, and defamatory statements are absolutely privileged by a legislative privilege and, therefore, are an improper basis for defamation.[7] Addressing legislative privilege, the Alabama Supreme Court has explained:

> An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously, and is false. To make the defense of absolute privilege available, the communication must be made on a privileged occasion; the circumstances under which the defamatory

---

2017) (City was entitled to summary judgment on outrage claim because outrage is an intentional tort and the City cannot be vicariously liable for the intentional torts of its employees); Walker v. City of Huntsville, 62 So. 3d 474, 502 (Ala. 2010) (affirming summary judgment in favor of the City of Huntsville on the plaintiff's outrage claim because the city could not be vicariously liable for the intentional tort of its employees).

[6] Ala. Code § 6-11-26 (emphasis supplied).

[7] See Galbreath v. Hale Cty., Alabama Comm'n, No. CV 15-308-CG-N, 2017 WL 457197, at *20–22 (S.D. Ala. Feb. 1, 2017).

language is used are the occasion, and it is the occasion that is privileged. The privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.[8]

"In order to promote the public welfare," members of a city council (or county commission, as the case may be) are conferred this "absolute privilege from certain causes of action stemming from the performance of their legislative functions."[9] This absolute privilege must be available "for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives."[10] The "legislative privilege applies even when the defamatory communication is not related to matters of public or legislative concern."[11] "[W]hether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court."[12]

Applying these standards, our Supreme Court, in Butler, held that statements made by a city council member during a city council meeting, which suggested various wrongdoings by a motorist and the mayor concerning the dismissal of the motorist's speeding ticket, were covered by a legislative privilege in the motorist's invasion of privacy and defamation claims.[13] The court reasoned that the council member's statements were made in conjunction with her recommendation to the city council that the mayor be asked to resign, or that the council begin an investigation.[14] Thus, the statements were made pursuant to the council member's performance of a legislative

---

[8] O'Barr v. Feist, 292 Ala. 440, 296 So. 2d 152, 156 (1974) (citation omitted).
[9] Butler v. Town of Argo, 871 So. 2d 1, 23 (Ala. 2003).
[10] Webster v. Byrd, 494 So. 2d 31, 35 (Ala. 1986) (citation omitted).
[11] Id.
[12] Walker v. Majors, 496 So. 2d 726, 730 (Ala. 1986).
[13] Butler, 871 So. 2d at 24–25.
[14] Id.

function.[15] Similarly, in Galbreath, the United States District Court for the Southern District held that allegedly defamatory statements about perceived deficiencies with the plaintiff's performance of a contract, made during executive session, were covered by legislative privilege, regardless of falsity or the speaker's alleged malice.[16] This was so because the statements were made during a meeting of the county commission itself and were in the context of recommending that the plaintiff be reprimanded for not properly fulfilling the contract, which the commission had approved.[17]

Indistinguishably, here, the complaint discloses that the alleged defamatory statements were in the context of the termination of Plaintiffs' employment, and were alleged to have been made in an executive session (albeit an alleged improper one) and therefore any claims against the City in this regard are clearly covered by legislative privilege. Consequently, the attempted fraud and misrepresentation claim against the City is due to be dismissed.[18]

Third, the claim for intentional infliction of emotional distress is due to be dismissed for additional and alternative reasons. Again, at the threshold, despite the complaint's continuing references to "Defendants" in the collective, it is by no means clear that this claim is actually directed to the City rather than to the co-defendant Oxford Emergency Medical Services, Inc.

---

[15] Id.

[16] Galbreath, 2017 WL 457197, at *20–22.

[17] See id.

[18] If Plaintiffs are attempting to assert some other claim of fraud and misrepresentation separate and apart from the alleged "false grounds" for termination of their employment, they still have not stated a claim because they have failed to state that claim with the requisite particularity. "Rule 9(b), A[la]. R. Civ. P., provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. Allstate Ins. Co., 399 So. 2d 288 (Ala. 1981)." Lyde v. United Ins. Co. of Am., 628 So. 2d 665, 670 (Ala. Civ. App. 1993). Plaintiffs have failed to meet that pleading standard, so dismissal is also appropriate for failure to comply with Rule 9(b). See Smith v. Cotton States Mut. Ins. Co., 154 So. 3d 141, 148–49 (Ala. Civ. App. 2014) (trial court properly entered summary judgment on misrepresentation claim when complaint failed to indicate the agents who allegedly made the misrepresentations or the time or place of the alleged misrepresentations); Crum v. Johns Manville, Inc., 19 So. 3d 208, 218–19 (Ala. Civ. App. 2009).

However, assuming for purposes of argument only that this particular claim is directed to the City, and even accepting the allegations in Plaintiffs' complaint as true and viewing them in the light most favorable to them, the alleged conduct does not constitute the type of extreme and outrageous conduct required to support a tort-of-outrage claim.[19] The tort of outrage is so limited that it has been recognized in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment.

While it is theoretically possible for the tort of outrage to exist outside of these three circumstances, "[i]t is clear, however, that the tort of outrage is viable only when the conduct is '"'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."'"[20] Consistent with Little, the alleged conduct simply does not, as a matter of law, rise to the level of a viable claim of outrage. Consequently, the attempted outrage claim against the City is due to be dismissed.[21]

Fourth, the claims for breach of fiduciary duty and conversion are due to be dismissed for additional and alternative reasons. Again, at the threshold, despite the complaint's continuing references to "Defendants" in the collective, it is by no means clear that these claims are actually

---

[19] See Little v. Robinson, 72 So. 3d 1168 (Ala. 2011) (African-American city councilman's allegations that mayor, who was Caucasian, essentially threatened to kill councilman by referring to councilman's "funeral" in commenting on heated exchange during meeting, that mayor regularly engaged in hate speech against African-Americans and had attended meeting conducted by group identified as hate group, that mayor typically voted along racial lines in matters before city council, and that mayor told newspaper reporter that he was elected because he "bought into black corruption" in city did not state claim against mayor for tort of outrage because none of the alleged conduct rose to the level of extreme and outrageous conduct that exceeded bounds of decency and was utterly intolerable in civilized society).

[20] Wilson v. Univ. of Alabama Health Servs. Found., P.C., 266 So. 3d 674, 677 (Ala. 2017) (internal citation and quotation omitted).

[21] While Plaintiffs have styled this claim as one for intentional infliction of emotional distress, "the tort of outrage is the same cause of action as intentional infliction of emotional distress." Thomas v. Williams, 21 So. 3d 1234, 1237 (Ala. Civ. App. 2008).

directed to the City rather than to the co-defendant Oxford Emergency Medical Services, Inc. However, assuming for purposes of argument only that these particular claims are directed to the City, they fail as a matter of law. The City is neither Plaintiffs' employer nor in any recognized fiduciary relationship with Plaintiffs. Moreover, our Supreme Court has repeatedly held that a claim for conversion is improper and fails as a matter of law unless there is earmarked money or specific money capable of identification.[22] This rule extends to bar claims that are based on allegations that an employer improperly withheld wages or otherwise misdirected paycheck deductions.[23] In cases where employees brought conversion claims to recover improperly withheld wages, a particular amount of money was at stake but the plaintiffs lost because "specific money" was not.[24] This case is no different.

Plaintiffs' allegations here are indistinguishable from those in controlling cases, particularly Campbell, and do not state a claim as a matter of law. Consequently, the attempted breach of fiduciary duty and conversion claims against the City are due to be dismissed.

Fifth, and last but certainly not least, the alleged Open Meetings Act violation is due to be dismissed as to the City. Once again, despite the complaint's continuing references to "Defendants" in the collective, it is not apparent that this claim is even asserted against the City; the complaint appears to be directed to one meeting allegedly held by the co-defendant Oxford Emergency Medical Services. (See Doc. 2, at ¶¶ 12-13.) However, assuming for purposes of

---

[22] Edwards v. Prime, Inc., 602 F.3d 1276, 1303–04 (11th Cir. 2010).

[23] Lewis v. Fowler, 479 So. 2d 725, 727 (Ala. 1985) (declining to extend the definition of "specific money capable of identification" to money that an employer withheld from an employee's wages in response to a garnishment action); SouthTrust Bank v. Donely, 925 So. 2d 934, 938 (Ala. 2005) (citing Knox v. Moskins Stores, 241 Ala. 346, 2 So. 2d 449, 450 (1941)) ("there is no conversion when an employer allegedly erroneously assigns an employee's wages"); Campbell v. Naman's Catering, Inc., 842 So. 2d 654, 660 (Ala. 2002) (affirming summary judgment against plaintiff on a conversion claim where the employer had continued to deduct premiums from his paycheck even though it had stopped paying those premiums to the employee's insurance company).

[24] See Campbell, 842 So. 2d at 660; Lewis, 479 So. 2d at 727; Knox, 2 So. 2d at 450.

argument only that this particular claim is directed to the City, Plaintiffs lack standing to assert it.[25]

In Ex parte AETC, in rejecting former employees' claims for damages and injunctive and declaratory relief based on the Open Meetings Act, our Supreme Court held that, even though any Alabama citizen may seek to enforce § 36-25A-9(a), a plaintiff must still satisfy the three requirements for standing set forth in Lujan v. Defs. of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). In turn, the AETC plaintiffs did not have standing because, even though they alleged that their termination was the direct result of a violation of the Open Meetings Act, the alleged injury was caused by an alleged one-time violation of the Open Meetings Act that was wholly past when the action was filed. Because the only relief was a civil fine and because the employees had not alleged any "continuing or imminent violation," they did not satisfy the redressability prong of the Lujan test.[26]

Here, at most, Plaintiffs have asserted a one-time violation of the Open Meetings Act that, they say, led to the termination of their employment, and, just like the AETC plaintiffs, lack standing to assert the claim they seek to raise. Consequently, the attempted "Open Meetings Act" claim is due to be dismissed.

**WHEREFORE, PREMISES CONSIDERED,** Oxford respectfully requests this Court to dismiss this case against it, *with* prejudice, and for such other, further, and general relief as may be appropriate under the circumstances.

Respectfully submitted,

/s/ C. David Stubbs
C. David Stubbs (STU-013)
Attorney for Defendant City of Oxford

---

[25] See Ex parte Alabama Educ. Television Comm'n, 151 So. 3d 283, 283–89 (Ala. 2013), as modified on denial of reh'g (Jan. 24, 2014).
[26] Ex parte AETC, 151 So. 3d at 288-89.

-8-

*OF COUNSEL:*
STUBBS, SILLS & FRYE P.C.
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
Phone: (256) 835-5050
Email: david-ssf@cableone.net

## CERTIFICATE OF FILING AND SERVICE

On this the 1st day of July 2020, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send notice to all attorneys of record. On the same day, I served the persons below by placing a true and correct paper copy in the U.S. Mail, postage prepaid, to any party who was not a registered participant in the AlaFile system:

*Via AlaFile:*

Lewis C. Godwin
Shabani & Associates, P.C.
5500 Southlake Park, Suite 200
Birmingham, Alabama 35244
Email: godwin.shabanilaw@gmail.com

James D. Butler
4985 McAdory School Road
McCalla, Alabama 35011-3440
Email: jamesbutlerlaw47@gmail.com

*Via U.S. Mail:*

Oxford Emergency Medical Services, Inc.
#12 U.S. Highway 78 West
Oxford, Alabama 36203



AlaFile E-Notice

To: CHARLES DAVID STUBBS
david-ssf@cableone.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/1/2020 8:57:57 AM

**D001 CITY OF OXFORD, ALABAMA**
MOTION TO DISMISS PURSUANT TO RULE 12(B)
[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/1/2020 8:57:57 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: CITY OF OXFORD, ALABAMA (PRO SE)
P.O. BOX 3383
OXFORD, AL, 36203-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/1/2020 8:57:57 AM

**D001 CITY OF OXFORD, ALABAMA**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/1/2020 8:57:57 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: OXFORD EMERGENCY MEDICAL SERVICES, INC. (PRO SE)
#12 US HWY NO 78 WEST
OXFORD, AL, 36203-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/1/2020 8:57:57 AM

**D001 CITY OF OXFORD, ALABAMA**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/1/2020 8:57:57 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/1/2020 8:57:57 AM

**D001 CITY OF OXFORD, ALABAMA**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/1/2020 8:57:57 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/1/2020 8:57:57 AM

**D001 CITY OF OXFORD, ALABAMA**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/1/2020 8:57:57 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov


ELECTRONICALLY FILED
7/1/2020 9:33 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | |
|---|---|
| HOWELL RICKY LEVERAL, | ) |
| HOWELL HEATHER, | ) |
| LEWIS WENDY, | ) |
| Plaintiffs, | ) |
| | ) |
| V. | ) Case No.:   CV-2020-900287.00 |
| | ) |
| CITY OF OXFORD, ALABAMA, | ) |
| OXFORD EMERGENCY MEDICAL | ) |
| SERVICES, INC., | ) |
| Defendants. | ) |

## ORDER SETTING HEARING

MOTION TO DISMISS PURSUANT TO RULE 12(B) filed by CITY OF OXFORD,
ALABAMA is hereby set for hearing on July 16, 2020 at 10:30 a.m. in courtroom 250.

**DONE this 1st day of July, 2020.**

**/s/ DEBRA H JONES**
**CIRCUIT JUDGE**



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/1/2020 9:32:56 AM

ORDER

[Filer: ]

Disposition:    OTHER
Judge:          DHJ

Notice Date:    7/1/2020 9:32:56 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/1/2020 9:32:56 AM

ORDER

[Filer: ]

| | |
|---|---|
| Disposition: | OTHER |
| Judge: | DHJ |
| Notice Date: | 7/1/2020 9:32:56 AM |

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/1/2020 9:32:56 AM

ORDER

[Filer: ]

| | |
|---|---|
| Disposition: | OTHER |
| Judge: | DHJ |
| Notice Date: | 7/1/2020 9:32:56 AM |

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: OXFORD EMERGENCY MEDICAL SERVICES, INC. (PRO SE)
#12 US HWY NO 78 WEST
OXFORD, AL, 36203-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/1/2020 9:32:56 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/1/2020 9:32:56 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov


ELECTRONICALLY FILED
7/1/2020 12:57 PM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | |
|---|---|
| **RICKY HOWELL, HEATHER HOWELL, and WENDY LEWIS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **Vs.** ) | **CIVIL ACTION NO.:** |
| ) | **CV-2020-900287** |
| **OXFORD EMERGENCY MEDICAL SERVICES, INC. and CITY OF OXFORD,** ) | |
| ) | |
| **Defendants.** ) | |

### NOTICE OF APPEARANCE

Comes now the undersigned and hereby files this Notice of Appearance as counsel of record for

Defendant, Oxford Emergency Medical Services, Inc., in the above-styled cause of action.

/s/ Jason C. Odom
JASON C. ODOM    ODO015
Attorney for Defendant, Oxford Emergency
Medical Services, Inc.

OF COUNSEL:
JASON C. ODOM, LLC
110 East 15th Street
Anniston, AL  36201
(256) 238-6005
(256) 238-0181 (fax)
jcodom@odomlegal.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2020, I electronically filed the foregoing with the Clerk of the Court using the Alafile system which will send notification of such filing to all attorneys of record.

/s/ Jason C. Odom
JASON C. ODOM    ODO015
Attorney for Defendant, Oxford Emergency
Medical Services, Inc.



AlaFile E-Notice

To: JASON CLAUDE ODOM
jcodom@odomlegal.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/1/2020 12:57:16 PM

Notice Date:     7/1/2020 12:57:16 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

To: OXFORD EMERGENCY MEDICAL SERVICES, INC. (PRO SE)
#12 US HWY NO 78 WEST
OXFORD, AL, 36203-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/1/2020 12:57:16 PM

Notice Date:     7/1/2020 12:57:16 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

11-CV-2020-900287.00

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/1/2020 12:57:16 PM

Notice Date:     7/1/2020 12:57:16 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/1/2020 12:57:16 PM

Notice Date:     7/1/2020 12:57:16 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/1/2020 12:57:16 PM

Notice Date:     7/1/2020 12:57:16 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov

| **STATE OF ALABAMA** Revised 3/5/08 | | **Cas** | ☐ **ELECTRONICALLY FILED** |
|---|---|---|---|

**STATE OF ALABAMA** Revised 3/5/08
Unified Judicial System
11-CALHOUN     ☐ District Court  ☑ Circuit Court

**Cas**
CV2

ELECTRONICALLY FILED
7/5/2020 6:10 PM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

| | |
|---|---|
| RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL | **CIVIL MOTION COVER SHEET**<br>*Name of Filing Party:* D002 - OXFORD EMERGENCY MEDICAL SERVICES, INC. |

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*

JASON CLAUDE ODOM
110 East 15th Street
ANNISTON, AL 36201
*Attorney Bar No.:* ODO015

☐ Oral Arguments Requested

## TYPE OF MOTION

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Compel |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Consolidation |
| | ☐ Continue |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Deposition |
| | ☐ Designate a Mediator |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Motion to Intervene ($297.00) | ☐ Disburse Funds |
| ☐ Other _____ | ☐ Extension of Time |
| pursuant to Rule _____ ($50.00) | ☐ In Limine |
| | ☐ Joinder |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ More Definite Statement |
| | ☑ Motion to Dismiss pursuant to Rule 12(b) |
| ☐ Local Court Costs $  0 | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| ☐ Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) | Date:<br>7/5/2020 6:08:52 PM | Signature of Attorney or Party<br>/s/ JASON CLAUDE ODOM |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
7/5/2020 6:10 PM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | | |
|---|---|---|
| RICKY HOWELL, HEATHER HOWELL, and WENDY LEWIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | **CIVIL ACTION NO.:** |
| | ) | **CV-2020-900287** |
| OXFORD EMERGENCY MEDICAL SERVICES, INC. and CITY OF OXFORD, | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION TO DISMISS

Comes now the Defendant, Oxford Emergency Medical Services, Inc.("OEMS"), in the above-styled cause of action, and files this, its Motion to Dismiss the Complaint of Plaintiffs pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure.

OEMS is and has been a "component unit" and "agency" of the City of Oxford since its reorganization pursuant to Resolution No. 2009-34 of the City Council of the City of Oxford. All of the Board Members of OEMS are appointed by the City Council of the City of Oxford and the City has frequently injected funding into the agency in order to keep it operating. By virtue of OEMS being an agency of the City of Oxford, it hereby adopts, incorporates and restates all arguments set forth by the City of Oxford in its Motion to Dismiss filed with this Court on July 1, 2020.

**WHEREFORE, PREMISES CONSIDERED**, OEMS respectfully requests this Court to dismiss this case against it, *with* prejudice, and for such other, further, and general relief as may be appropriate under the circumstances.

/s/ Jason C. Odom
JASON C. ODOM     ODO015
Attorney for Defendant, Oxford Emergency
Medical Services, Inc.

OF COUNSEL:
JASON C. ODOM, LLC
110 East 15th Street
Anniston, AL 36201
(256) 238-6005
(256) 238-0181 (fax)
jcodom@odomlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court using the Alafile system which will send notification of such filing to all attorneys of record.

/s/ Jason C. Odom
JASON C. ODOM        ODO015
Attorney for Defendant, Oxford Emergency
Medical Services, Inc.



AlaFile E-Notice

To: JASON CLAUDE ODOM
jcodom@odomlegal.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/5/2020 6:10:05 PM

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: ODOM JASON CLAUDE]

Notice Date: 7/5/2020 6:10:05 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/5/2020 6:10:05 PM

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: ODOM JASON CLAUDE]

Notice Date:      7/5/2020 6:10:05 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/5/2020 6:10:05 PM

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: ODOM JASON CLAUDE]

Notice Date:     7/5/2020 6:10:05 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/5/2020 6:10:05 PM

**D002 OXFORD EMERGENCY MEDICAL SERVICES, INC.**

MOTION TO DISMISS PURSUANT TO RULE 12(B)

[Filer: ODOM JASON CLAUDE]

Notice Date:      7/5/2020 6:10:05 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: ARNOLD W. UMBACH III
awu@starneslaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:      7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



ELECTRONICALLY FILED
7/6/2020 10:17 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY HOWELL, HEATHER )
HOWELL, and WENDY LEWIS, )
            )
        Plaintiffs, )
            )
-vs- ) Civil Action No. 11-CV-2020-900287.00
            )
OXFORD EMERGENCY MEDICAL )
SERVICES, INC. and CITY OF )
OXFORD, )
            )
        Defendants. )

### NOTICE OF APPEARANCE

COMES NOW Arnold W. Umbach III of the law firm of Starnes Davis Florie LLP

and hereby gives notice of his appearance as additional counsel on behalf of Defendant

Oxford Emergency Medical Services, Inc.

                 *s/Arnold W. Umbach III*
                 Arnold W. Umbach III (ASB-1932-M66A)
                 STARNES DAVIS FLORIE LLP
                 100 Brookwood Place, Seventh Floor
                 Birmingham, Alabama 35209
                 (205) 868-6000
                 *tumbach@starneslaw.com*

                 One of the Attorneys for Defendant
                 Oxford Emergency Medical Services, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020, I electronically filed the foregoing with the
Clerk of the Court using the AlaFile system, which will send electronic notification to all
counsel of record.

                 *s/Arnold W. Umbach III*
                 Arnold W. Umbach III

{B3535763}



AlaFile E-Notice

To: ARNOLD W. UMBACH III
awu@starneslaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:     7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:     7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:     7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:     7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

To: ODOM JASON CLAUDE
jcodom@odomlegal.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following NOTICE OF APPEARANCE was FILED on 7/6/2020 10:17:11 AM

Notice Date:     7/6/2020 10:17:11 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/9/2020 10:50:28 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



ELECTRONICALLY FILED
7/9/2020 10:50 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | |
|---|---|
| HOWELL RICKY LEVERAL,<br>HOWELL HEATHER,<br>LEWIS WENDY,<br>Plaintiffs, | )<br>)<br>)<br>)<br>) |
| V. | ) Case No.:   CV-2020-900287.00 |
| | ) |
| CITY OF OXFORD, ALABAMA,<br>OXFORD EMERGENCY MEDICAL<br>SERVICES, INC.,<br>Defendants. | )<br>)<br>)<br>) |

### ORDER SETTING HEARING

This case came before the Court upon the motion to dismiss filed by Oxford Emergency Medical Services, Inc.  The motion is hereby set for hearing on July 16, 2020 at 10:30 a.m. in courtroom 250.

**DONE this 9ᵗʰ day of July, 2020.**

/s/ DEBRA H JONES
**CIRCUIT JUDGE**



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/9/2020 10:50:28 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/9/2020 10:50:28 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



**AlaFile E-Notice**

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/9/2020 10:50:28 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: ODOM JASON CLAUDE
jcodom@odomlegal.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

| | |
|---|---|
| Disposition: | OTHER |
| Judge: | DHJ |
| Notice Date: | 7/9/2020 10:50:28 AM |

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/9/2020 10:50:28 AM

ORDER

[Filer: ]

Disposition:    OTHER
Judge:          DHJ

Notice Date:    7/9/2020 10:50:28 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**

**C002 HOWELL HEATHER**

**C003 LEWIS WENDY**

RECUSAL

[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date:     7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM McCARSON, CLERK

| **STATE OF ALABAMA** | Revised 3/5/08 | **Cas** |
|---|---|---|
| Unified Judicial System | | |
| 11-CALHOUN | ☐ District Court  ☑ Circuit Court | CV2 |

**CIVIL MOTION COVER SHEET**

| | |
|---|---|
| RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL | *Name of Filing Party* C001 - HOWELL RICKY LEVERAL<br>C002 - HOWELL HEATHER<br>C003 - LEWIS WENDY |

| | |
|---|---|
| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.* | ☑ Oral Arguments Requested |
| L. CHRIS GODWIN | |
| 5500 Southlake Park, Suite 200 | |
| Hoover, AL 35244 | |
| *Attorney Bar No.:* GOD015 | |

## TYPE OF MOTION

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Disburse Funds |
| ☐ Motion to Intervene ($297.00) | ☐ Extension of Time |
| ☐ Other _____ | ☐ In Limine |
| pursuant to Rule _____ ($50.00) | ☐ Joinder |
| | ☐ More Definite Statement |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.* | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| ☐ Local Court Costs $ ___0___ | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☑ Other   Recusal |
| | pursuant to Rule  A.C.J.E 3 C.1   (Subject to Filing Fee) |

| | | |
|---|---|---|
| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐ | Date:<br>7/10/2020 10:17:24 AM | Signature of Attorney or Party<br>/s/ L. CHRIS GODWIN |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.



ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY HOWELL, HEATHER )
HOWELL, AND WENDY LEWIS )
                                        )
      Plaintiffs, )
                                          )
vs. )     CASE NO: CV-2020-900287
                                          )
                                          )
                                          )
OXFORD EMERGENCY MEDICAL )
SERVICES, INC. and CITY OF )
OXFORD, ALABAMA, )
And Fictitious Party Defendants A )
through D, )
                                          )
      Defendants. )

## PLAINTIFF'S MOTION FOR RECUSAL AND TRANSFER OF VENUE

COMES NOW the Plaintiffs Ricky Howell, Heather Howell, and Wendy Lewis by and through undersigned counsel, and hereby submits this Motion for Recusal and Transfer of Venue in the above styled cause, as grounds states the following:

## STANDARD FOR RECUSAL

1. In relevant part, the Canons of Judicial Ethics provide as follows:

### CANON 2: A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL HIS ACTIVITIES.

A – A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B – A judge should at all times maintain the decorum and temperance befitting his office and should avoid conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

C – A judge should not allow his family, social, political, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness at any

hearing before any court, or judicial or governmental commission.

## CANNON 3C: DISQUALIFICATION

(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:

a. He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . .

2. In *Ex parte Duncan*, 638 So. 2d332 (Ala. 1994), the Alabama Supreme Court stated the following concerning Canon 3.C(1):

> "*Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when 'facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.'*" 638 So. 2d at 1334 (quoting *Acromag-Viking v. Blalock,* 420 So. 2d 60, 61 (Ala. 1982)).

3. The standard for recusal is objective: "Whether a reasonable person knowing everything that the judge knows would have a reasonable basis for questioning the judge's impartiality." *Ex parte Bank of America, N.A.*, 39 So. 3d 113, 117 (Ala. 2009) (citations and quotations omitted). "The focus of inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or lack of impartiality on the part of the judge in question." *Id.* (citations and quotations omitted.)

## II. **ARGUMENT**

4. That extensive media and press coverage of the parties to this cause and other litigation involving the same parties (Ricky Howell, City of Oxford and Oxford Emergency Medical Services, Inc.) prevents or precludes an impartial jury from being empaneled in Calhoun County, Alabama, and that the Plaintiffs cannot receive a fair and impartial trial in Calhoun County, Alabama due to extensive and sustained media coverage of the parties to this cause.

5. That Exhibit 1: news article by Tyler Zach, "Oxford EMS employee suing employer over alleged illegal meetings". *Anniston Star*, June 19. 201, pages 1-2 concern a lawsuit by another former employee of Oxford Emergency Medical Services, Inc., Melissa Hall, which alleges violations of the Alabama Open Meeting Act by Oxford Emergency Medical Services, Inc. The Plaintiffs in this cause have made the same or similar allegation of violations of the Alabama Open Meetings Act against Oxford Emergency Medical Services, Inc. Publication of this article has given potential jurors knowledge of these prior allegations of similar conduct and such knowledge taints the jury pool in Calhoun County. Publication of this article inhibits or interferes with potential Calhoun County juror's ability to be impartial and render a verdict only on the evidence at trial of this cause.

6. That Exhibit 2, news article by Tyler, Zach, "Oxford EMS faces opposition in plans to expand business", *Anniston Star*, June 28. 2017, pages 1-3 discusses allegations of violation of the "state's laws on public meetings" by Oxford Emergency Medical Services, Inc. Plaintiffs in this cause have alleged violations of the Alabama Open Meetings Act by Defendant Oxford Emergency Medical Services Board and the City of Oxford. The knowledge of these prior allegations of similar conduct taints the jury pool and publication inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

7. That Exhibit 3, news article by Tyler, Zach, "Oxford EMS employee who filed suit placed on paid leave", *Anniston Star*, July 6. 2017, pages 1-4, discusses two workers who had filed suit against Oxford Emergency Medical Services, Inc. being placed on paid leave. The article

mentions Melissa "Missy" Hall's allegations of violations of the Alabama Open Meetings Act by Oxford Emergency Medical Services, Inc., and violations of hiring workers who would be supervised by family members. The Plaintiffs in this cause have alleged violations of the Alabama Open Meetings Acts. Based on information and belief, the allegation was directed toward Plaintiff Ricky Howell and was basis for an ethics violation complaint against him. The knowledge of these prior allegations of similar conduct by Oxford Emergency Medical services, Inc. taints the jury pool in Calhoun County and publication inhibits or interferes with potential Calhoun County jurors ability to be impartial and render a verdict only on the evidence at trial of this cause. The improper hiring of family members allegation by Melissa "Missy" Hall suggest improper conduct on the part of former Oxford Emergency Medical Services, Inc. and or it's Director at the time Ricky Howell (Plaintiff in this cause), as well as on the part of his family members (Heather Howell, terminated daughter; and Wendy Lewis, terminated ex-wife). Publication of this information inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

8. That Exhibit 4, news article by Tyler, Zach, "Litigation not affecting Oxford EMS operations, suspended employees say", *Anniston Star*, July 13, 2017, pages 1-7, states *"An office manager working at the agency in June filed a lawsuit against the directors, alleging they habitually ignored state laws regarding public meetings as well as a city policy on nepotism."* The improper hiring of family members allegation by Melissa "Missy" Hall suggest improper conduct on the part of former Oxford Emergency Medical Services, Inc. Director Ricky Howell (Plaintiff in this cause), as well as on the part of his family members (Heather Howell, terminated daughter; and Wendy Lewis, terminated ex-wife). The publication of this information

to prospective jurors in Calhoun County provides them with knowledge of these prior allegations of alleged similar conduct by Oxford Emergency Medical Services, Inc. Such publication taints the jury pool and inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

9. That Exhibit 5 new article, Tyler, Zach, "Judge hears arguments in suit against Oxford EMS", *Anniston Star*, August 8, 2017, pages 1-2 notes '*The lawsuit alleges the agency's* (Oxford Emergency Medical Services) *board of directors frequently ignored the act* " (Alabama's Open Meetings Act) referring to Melissa 'Missy" Hall's lawsuit against Oxford Emergency Medical Services, Inc. The article discusses allegations of unlawful conduct by Oxford Emergency Medical Services, Inc. Negative inferences about Oxford Emergency Medical Services, Inc. would likely be drawn by potential jurors in Calhoun County. Publication of this information inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

10. That Exhibit 6, news article, Tyler, Zach, "Oxford EMS chief cleared by Ethics Commission", *Anniston Star*, October 18, 2017, pages 1-3, discusses allegations of improper acts to have been committed by Ricky Howell as Director of Oxford Emergency Medical Services, Inc. Publication of this article to prospective jurors in Calhoun County has or will inhibit or interfere with their ability to be impartial and render a verdict only on the evidence at trial of this cause.

11. That Exhibit 7, news article, Tyler, Zach, "Judge dismisses suit against Oxford EMS"

*Anniston Star*, November 17, 2017, pages 1-2 included the following: "*The agency employee,*
*Melissa "Missy" Hall, filed suit against its board in June, alleging that its members frequently*
*disregarded Alabama's Open Meetings Act.*" While the article states "*Circuit Judge Brian*
*Howell ruled the office manager hadn't sufficiently shown the board's alleged actions harmed*
*her.*", nevertheless it recounts allegations of improper conduct or actions by Oxford Emergency
Medical Services, Inc., its Board of Directors, and Director Ricky Howell (Plaintiff in this
cause). Publication of this information inhibits or interferes with potential Calhoun County
jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.


12. That Exhibit 8, news article, Gaddy, Dennis, "A second former Oxford EMS employee sues
organization", *Anniston Star*, August 10, 2018 discusses a suit filed against Oxford Emergency
Medical Services, Inc. by Ann Moody alleging her retaliatory discharge by Oxford Emergency
Medical Services, Inc., and improper formation of the ambulance service. The article covers
allegations of improper and or illegal acts by Oxford Emergency Medical Services, Inc.
Publication of this information inhibits or interferes with potential Calhoun County jurors' ability
to be impartial and render a verdict only on the evidence at trial of this cause.


13. That Exhibit 9, news article, Gaddy, Daniel, "Former Oxford EMS employee alleges misuse
of funds in new suit", *Anniston Star*, August 2, 2018, pages 1-2 discuss former Oxford
Emergency Medical Services, Inc. employee Melissa Hall's lawsuit against Oxford Emergency
Medical Services, Inc. alleging misuse of public funds and her wrongful termination by Oxford
Emergency Medical Services, Inc. Plaintiffs to this cause have made similar allegations.
Publication of this information inhibits or interferes with potential Calhoun County jurors' ability

to be impartial and render a verdict only on the evidence at trial of this cause.

14. That Exhibit 10, news article, Gaddy, Daniel, "Anniston EMS sues Oxford ambulance service, alleging interference", *Anniston Star*, August 16, 2018, pages 1-2, discusses allegations that Oxford Emergency Medical Services, Inc was "*unlawfully incorporated and does not have authority to operate in the community*" and "*interfered with contracts and/or business relations of Anniston EMS.*" Publication of this article with allegations of improper acts by Oxford Emergency Medical Services, Inc., its Board of Directors, and Director Ricky Howell (Plaintiff in this cause) inhibits or interferes with potential Calhoun County jurors ability to be impartial and render a verdict only on the evidence at trial of this cause.

15. That Exhibit 11, news article, Nunnally, Ben, "Al City Approves More Money for Private EMS Service", *Anniston Star*, October 19, 2019, pages 1-3 discusses past funding to Oxford Emergency Medical Services, Inc. from the City of Oxford, their need for additional money, and performance of the company. Plaintiff avers that publication of this article to prospective jurors in Calhoun County inhibits or interferes with their ability to be impartial and render a verdict only on the evidence at trial of this cause. Further, a juror having read this article would likely be unwilling to rule against Oxford Emergency Medical Services, Inc. so as not to jeopardize or deprive themselves of ambulance services or emergency medical care in their home county.

16. That Exhibit 12, news article, Nunnally, Ben, "Ala. EMS Agency Fails to Provide Insurance to Employees", *EMS WORLD, emsworld.com*, December 22, 2019 in which Anniston Star staff writer discusses lapses in health insurance to employees of Defendant Oxford Emergency

Medical Services, Inc. whereby in spite of payroll withholding for health insurance premiums by the Defendant Oxford Emergency Medical Services, Inc., that such lapses in coverage occurred on more than one occasion and involved more than one employee of Oxford Emergency Medical Services, Inc. Plaintiffs Howell, Howell and Lewis have made the same allegations against Defendants Oxford Emergency Medical Services, Inc. and City of Oxford in this cause. Plaintiff avers that publication of this article inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

17. That Exhibit 13, news article, Nunnally, Ben, "Oxford EMS employees and families endure insurance lapses- Family reports gaps in both retirement and health insurance", *Anniston Star*, December 22, 2019, pages 1-6 is the same article as Exhibit 12 above. Plaintiffs assert this articles' publication inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

18. That Exhibit 14, news article, Gaddy, Daniel, "Former EMS employee claims agency misuses public funds", *EMS1.com*, August 4, 2018, pages 1-2 discusses the lawsuit by Melissa "Missy" Hall filed against Oxford Emergency Medical Services, Inc. alleging misuse of public funds by Oxford Emergency Medical Services, Inc and improper formation of Oxford Emergency Medical Services, Inc. The article discusses Ricky Howell (Plaintiff in this cause) being cleared of ethics violations in 2017. This articles' publication and reported allegations inhibit or interfere with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

19. That Exhibit 15, "Oxford gives more money to private EMS service", *Anniston Star*, October 28, 2019 discusses the City of Oxford's funding of Oxford Emergency Medical Services, Inc. Councilman Mike Henderson is quoted "The overall operation isn't performing at the level it needs to." 'We don't want to see them fail, we don't want to see anybody losing their jobs or anything like that, but we can't keep absorbing the losses we're having." The article depicts Oxford Emergency Medical Services, Inc. as an entity or business dependent on the City of Oxford for funding, and on not performing at the level it needs to. This press article includes statement or comments that cast Oxford Emergency Medical Services, Inc. in a negative light. Their publication inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

20. That Exhibit 16, new article, Nunnally, Ben, "Oxford ambulance service's origins could decide lawsuits" Anniston Star, October 30, 2019, pages 1-3 quotes Attorney Joel Laird discussing Oxford Emergency Medical Services, Inc. "*So far, it's not being operated in compliance with the law, according to our position.*" "*Laird represents Ann Moody and Melissa Hall, former office managers for the service who were both fired after alleging misconduct by company management, according to suits Laird filed.*" Press coverage of allegations of improper and or unlawful conduct such as in this article inhibit or interfere with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

21. That Exhibit 17, news article, Nunnally, Ben "Oxford EMS getting nothing more from the city", *Anniston Star*, November 27, 2019, pages 1-3 discusses Oxford Emergency Medical Services'

difficulty in paying its bills and operating without appropriations from the City of Oxford. The article casts Oxford Emergency Medical Services, Inc in a negative light. ""*This is stupid, to keep giving them money and not hold them accountable for it,*" *Councilman Mike Henderson says.*" A reasonable inference could be made from this story that Oxford Emergency Medical Services, Inc. was poorly run, mismanaged and or was a drain on public resources. Such inferences or conclusions from this article as well as general conclusions from reading this article inhibit or prevent potential jurors from Calhoun County to be impartial and render a verdict only upon evidence presented at trial of this cause.

22. That Exhibit 18, news article, Nunnally, Ben "Oxford appoints new EMS board members after four resignations" *Anniston Star*, January 21, 2020, pages 1-3 contains the following "*Employees of the service spoke out last month about Oxford EMS drawing money from paychecks to pay health insurance premiums and retirement contributions, but repeatedly failing to pay the money out.*" Plaintiffs to this cause Howell, Howell and Lewis have made the same allegation against Defendant Oxford Emergency Medical Services, Inc. and the City of Oxford with respect to their alleged withholding money from their employee's paychecks and then failing to pay the money to the proper entity or agency for their health insurance. Plaintiffs to this cause further allege employer withholding and then a failure to pay taxes, unemployment, and retirement. Publication of this article in Calhoun County inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

23. That Exhibit 19, news article, Nunnally, Ben, "Oxford EMS director, family members no longer employed at ambulance service", *Anniston Star*, January 23, 2020, pages 1-3 discuss Ricky

Howell (Plaintiff in this cause) and two relatives who were let go by Oxford Emergency Medical Service. *"Yes they have been let go, wrote Marty Carter, the Oxford EMS chairman…"* and later in the article *"The terminations followed the City Council's appointment of four new board members to the five person Oxford EMS board Tuesday, after a weeks-long series of resignations that left the board with Carter as its sole member."* Plaintiff avers that publication of this article inhibits or interferes with potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

24. That there were numerous other media stories, accounts or broadcasts that discussed the performance of Oxford Emergency Medical Services, Inc., its management and operations, its budget, lawsuits filed against it, and termination of employees and other matters. There has been such media coverage that potential Calhoun County jurors' ability to be impartial and render a verdict only on the evidence at trial of this cause.

25. That there are other reasons besides press coverage of the parties that support Petitioner's argument that transfer to another venue is proper. Citizens of Calhoun County, Alabama depend on Defendant Oxford Emergency Medical Services, Inc. for ambulance and emergency medical care. Such persons would be reluctant or unwilling to render a verdict against Oxford Emergency Medical Services, Inc. out of fear of jeopardizing their or their family's access to ambulance and emergency medical services provided by Oxford Emergency Medical Services, Inc.

26. That Plaintiff Wendy Lewis was an Optician at East Alabama Eye Clinic in Anniston, Alabama

from 2002-2019 and has a patient care relationship with extensive members of the population of Calhoun County, Alabama that might be called upon to serve as jurors.

27. That the spouse of Plaintiff Wendy Lewis is an Ophthalmologist at East Alabama Eye Clinic in Anniston, Alabama and has been for the previous fourteen years. Dr. Lewis and his partner at East Alabama Eye Clinic have a substantial number of patients in Calhoun County, Alabama and has a physician client relationship with those patients.

28. That one or more Judges of Calhoun County, Alabama are patients of the spouse of Plaintiff Wendy Lewis.

29. That Plaintiff Ricky Howell has had business relationships involving ambulance or emergency medical care with either Calhoun County Judges or their relatives.

30. That Plaintiff Ricky Howell is a relative of one of the Calhoun County Judges.

31. Prior cases involving Oxford Emergency Medical Services, Inc. have had recusals and or a transfer from Calhoun County and are ongoing in the Circuit Court of St. Clair County, Alabama including State of Alabama Ex Rel. Melissa 'Missy" Hall, et al. v. Oxford Emergency Medical Services, Inc., Cv-2018-420.80 and Ann Moody v. Oxford Emergency Medical Services, Inc. et al., CV-2018-900444.80

32. Plaintiff avers that a transfer to St. Clair County is proper for reasons of judicial economy in that Honorable Judge Seay in the Circuit Court of St. Clair County, Alabama is familiar with the parties and the issues surrounding the formation of the entities, the dispute or allegations as to whether or not the Defendant Oxford Emergency Medical Services, Inc. is part of the City of

Oxford Alabama and other common issues.

33. Plaintiffs aver that failure to transfer this cause would create an appearance of impartiality.

34. Canons of judicial ethics require a recusal when facts are shown which make it reasonable for members of the public, or a party, or counsel opposed to question the impartiality of the judge. Canons of Jud. Ethics, Canon 3(C)(1).

WHEREFORE Premises Considered, Plaintiffs pray for Order recusing the Judges of Calhoun County, Alabama and transferring this case from Calhoun County to St. Clair County, Alabama or alternatively to another county for trial of this cause, and for any other relief for which Plaintiffs may be entitled. Plaintiff further prays this motion will be set for hearing on July 16, 2020 at 10:30 a.m. which is the date and time set for Defendants' pending motions or that the haring day be continued if additional time is warranted for responses to this motion.

Respectfully Submitted,

s./ Lewis C. Godwin
Lewis C. Godwin (GOD-015)
Attorney for the Plaintiffs
Shabani & Associates, P.C.
5500 Southlake Park, Suite 200
Birmingham, AL 35244
PHONE 205-823-1223  FAX 205-823-1967
E-Mail: godwin.shabanilaw@gmail.com

s./ James D. Butler
James D. Butler (BUT-026)
Attorney for the Plaintiffs
Law Office of James Butler
4985 McAdory School Road
McCalla, AL 35011-3440
PHONE 205-434-2124

E-Mail: jamesbutlerlaw47@gmail.com

Certificate of Service

I certify that I have on the 10th day of July, 2020 served a copy of the above and foregoing on the following parties counsel of record by using the Alacourt Alafile electronic filing system which will transmit copies via electronic mail to the following:

Jason C. Odom
Attorney for Defendant Oxford Emergency Medical Services, Inc.
JASON C. ODOM, LLC
110 East 15th Street
Anniston, Alabama 36201
Telephone (256) 238-6005
Fax (256) 238-0181

C. David Stubbs
Attorney for Defendant City of Oxford
STUBBS, SILLS & FRYE, P.C.
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
Telephone (256) 835-5050
David-ssf@cableone.net

s./ Lewis C. Godwin

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-employee-suing-emp
meetings/article_8699c258-5554-11e7-9a30-2739b8c9197f.html

# Oxford EMS employee suing employer over alleged illegal meetings

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Jun 19, 2017

>>>>                    <<<<
PLAINTIFF'S
EXHIBIT
1

Oxford Emergency Medical Services' office manager is suing her employer, alleging members of the ambulance dispatch service's board of directors ignored state laws regarding public meetings.

According to the lawsuit filed Friday in Calhoun County Circuit Court, the board "since its creation" in 2009 has failed to comply with Alabama's Open Meetings Act by not notifying the public of its meetings or keeping records thereof. The act requires that governmental bodies meet and deliberate in the open, with advance notice of those meetings given to the public and records from each made available on request.

The ambulance service is partially funded by the city of Oxford, budgeted to receive as much as $290,000 from the municipality this fiscal year.

The City Council appoints members to the nonprofit's board of directors, a volunteer group overseeing an operation that in fiscal 2016 recorded $2.3 million in revenues and $1.9 million in expenses.

In her civil complaint, Oxford EMS office manager Melissa Hall alleges that board of directors has disregarded the law. It allegedly did so most recently this month, when some of its members met to hire two law firms — White, Arnold & Dowd of Birmingham, and Trussell, Funderburg, Rea & Bell, of Pell City — for a total of $45,000.

Several weeks before that June 5 meeting, in April, the board is alleged to have met and given a full-time job to Heather Howell, daughter of Oxford EMS director Ricky Howell.

"They are required to make public notice that the meetings are going to happen, and they have failed to do so," Ted Copland, the Anniston attorney representing Hall, said by phone Monday.



Not publicizing the meetings allows the board's members "to do whatever they want to do, rather than getting the public's opinion," Copland said. He did not know why the board sought legal counsel.

His client's lawsuit specifically names as defendants Gregory Skinner, chairman of the board; Patrick Miller, vice chairman; and Randall Beshears, a board member — the three men perceived to have the most say over the board's doings, Copland said.

Efforts to reach Howell were unsuccessful Monday. Reached by phone, Skinner declined to comment on the lawsuit.

Hall's complaint asks for a judge to overturn the board's recent actions, and seeks her attorney's fees, court costs and other damages.

Such a judgment would "keep them from being able to move forward with things they've done in these meetings that were closed, and to keep it from happening in the future," Copland said. "Basically, some transparency is what we're looking for."

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-faces-opposition-in-p
business/article_9e17fd26-5c4a-11e7-ab9a-ff64c2138553.html

# Oxford EMS faces opposition in plans to expand business

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Jun 28, 2017



**PLAINTIFF'S EXHIBIT**

2

Oxford Emergency Medical Services is seeking permission to carry patients to non-emergency visits at doctors' offices and clinics beyond the city's limits from the state commission that regulates such services.

The request has drawn protest from an established transport company that says the extra competition would hurt patients, and from a former circuit judge, who alleges the Oxford agency has already been providing the service it wants permission to offer — and with no legal foundation to do so. The Star obtained a copy of the request and two letters protesting its approval on Monday.

The Oxford agency applied to the Alabama Public Service Commission in May for permission to expand its services. It seeks, according to a copy of the application, to establish a wheelchair van operation in a seven-county region around Calhoun County.

"There has been a demand for those services ... frankly, it's a product of their reputation for excellent service," Mark White, a shareholder at the Birmingham law firm White, Arnold & Dowd, said by phone Tuesday.

White's firm has been retained by the Oxford agency — as alleged in a lawsuit filed recently by a board employee — though the attorney declined to say why specifically.

"The scope of our representation is initially general," White said.

The Public Service Commission's three elected members are tasked by state law with regulating wheelchair van operations. A meeting to consider the Oxford agency's request had been set for Thursday. It's been canceled, according to a commission staffer, at the agency's request.

White said that request was made to give his firm time to defend the application.

"We just got consulted, and we've got to find out what exactly the nature of any objection is," he said.

According to a public information manager, the commission has received two objections to the expansion Oxford EMS seeks.

Joel Laird, former Calhoun County circuit judge and a retired attorney, was one who protested the agency's proposed expansion.

Reached by phone Wednesday, Laird said he did so "as a concerned citizen."

In the letter he submitted to the commission, Laird alleges that the expansion sought would be "no 'new operation'" for Oxford EMS — the agency "has been operating wheelchair vans for years without the proper certificate."

Laird submitted a list of 29 van trips allegedly made in violation of state law between May 2 and June 17. Asked how he knew of the trips, Laird said he'd seen the agency's wheelchair vans in the course of his own work, which takes him between Alabama and Georgia.

Laird also alleges that the section of state law that Oxford's City Council cited when its members voted to establish Oxford EMS in 2009 doesn't permit the agency to operate beyond the city's limits. The city continues to fund the nonprofit ambulance dispatch service, allocating $290,000 this fiscal year.

"It's no different than providing fire protection or police services," Laird said. "The city of Oxford doesn't provide those services to protect the people of Anniston."

Medical Transport of Alabama, a Bessemer-based company that operates across the state, also opposes the move.

"The proposed operations are inconsistent with the public interest," a lawyer for the business notes in a letter protesting the application, adding that those operations would "unnecessarily duplicate" and "materially depreciate" the services MTA already offers.

White, the Oxford agency's lawyer, said Tuesday that he had "no reason to believe they have not comported themselves in complete compliance" with state law and the commission's requirements.

"Any allegation that's made will be investigated and defended," he said.

As for the lawsuit filed in mid June against the agency's board of directors, which alleges they failed to follow the state's laws on public meetings, White called those allegations "erroneous at best."

Staff writer Zach Tyler: 256-235-3564. On Twitter @ZTyler_Star.

Tags   | Company |   | Law |   | Mark White |   | Emergency Medical Service |   | Joel Laird |   | Agency |

## Zach Tyler



DOCUMENT 27

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-employee-who-filed-leave/article_ac2fccae-629e-11e7-86d6-6bd416c4ecba.html

# Oxford EMS employee who filed suit placed on paid leave



By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com
Jul 6, 2017

OXFORD — Two Oxford Emergency Medical Services employees were placed on paid administrative leave Thursday, nearly a month after one of the employees filed suit against the agency's board of directors.

The employees spoke to The Star at length Thursday morning, showing a reporter a copy of the letter informing them of the employment action. The letter was signed by Greg Skinner, chairman of the nonprofit ambulance dispatch service's board of directors. It referenced an investigation into the "possible removal and/or destruction" of the agency's property, in violation of an order against such. The order, an attorney for the agency said Thursday, is a commonplace legal practice.

The attorney, Mark White of the Birmingham firm White, Arnold & Dowd, declined to comment on the move by phone Thursday afternoon, but sent a written statement by email.

The statement read that White's firm is representing Oxford EMS on "multiple matters," but that those matters cannot be discussed "because they relate to our client's assistance and cooperation with appropriate law enforcement entities" and an internal investigation conducted by the firm at the agency's request.

Melissa "Missy" Hall said Thursday that she's neither destroyed nor removed any property or documents belonging to the nonprofit ambulance dispatch service.

"I've been trying to preserve evidence," she said. "I've not done anything wrong."

Hall filed suit against the agency and its board of directors in mid June, alleging that board's members have failed to follow Alabama's Open Meetings Act, and also violated a city policy against hiring workers who'd be supervised by family members.

Hall said Thursday that the board's action was "retaliation" for her suit.

Ann Moody, the other employee placed on paid leave and the other half of the agency's office staff, said she'd been labeled "guilty by association."

"I guess they were afraid that if I stayed I'd tell her stuff," Moody said Thursday, speaking of Hall.

The two said they are not the only employees of the agency with concerns about what both described as an atmosphere hostile to questions about the board's actions.

Moody, who's been employed by the agency for two decades and spent more than 17 years of that time as its office manager, described an unclear transition at the nonprofit around 2009.

Records from the Calhoun County Probate Office show the agency has existed in some form since 1970. In 2009, Moody and two other employees — Randy Third, then director of the operation, and Ricky Howell, now director — petitioned the Oxford City Council for permission to form the public corporation as it exists today.

The application Moody and the two other incorporators made cites a section of Alabama law that allows cities and counties to establish ambulance dispatch services. Shortly after the council approved the application, the agency amended a 2008 tax form to show that its assets had been absorbed by the city.



Today, it's not clear if the agency and its employees operate as part of or wholly separate from the city's government, Hall and Moody said.

"It's been gray for a long time if we were or if we weren't," Moody said.

Reached by phone Thursday evening, Oxford Mayor Alton Craft said the agency is separate from the city.

"They are their own entity as far as we're concerned," Craft said, "until someone tells us different."

The agency petitioned the City Council in 2009 in order to get its employees access to the Retirement System of Alabama, Craft said.

The city has provided financial support on-and-off to the agency for a number of years, with that support now set at $14,000 per month. Other city departments also provide fuel and maintain the service's vehicles.

The nonprofit's directors are also supposed to make reports to the City Council on operations, which Craft said he thought has happened once per year.

Craft said that the agency's current director, Ricky Howell, "has always been available" to answer questions, but noted that the reports seem to "only come during appropriation time," referring to the yearly period of budget considerations the council goes through.

Staff writer Zach Tyler: 256-235-3564. On Twitter @ZTyler_Star.

Tags    Employee   Company   Law   Work   Agency   Emergency Medical Service   Board Of Directors   Ann Moody

Suit   Oxford

Zach Tyler



ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/the_daily_home/litigation-not-affecting-oxfor
employees-say/article_53eb97a6-682c-11e7-9ce4-af4bf84d6163.html

# Litigation not affecting Oxford EMS operations, suspended employees say

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Jul 13, 2017

**PLAINTIFF'S EXHIBIT**
4



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station. (Kirsten Fiscus / The Anniston Star)

Whenever cars crash in Oxford and someone calls 911, fire Chief Gary Sparks said recently, the dispatcher on the other end of the line typically asks two questions.

"Is anyone hurt?" An answer yes triggers an Oxford Emergency Medical Services ambulance, Sparks said. An affirmative to the second question — "Is anyone trapped in the vehicle?" — dispatches Sparks' firefighters, who assist paramedics on the most severe wrecks and in other medical emergencies.

The two agencies were called together to emergencies 287 times last year, Sparks said. The ambulance dispatchers likely answer many more calls than his agency does. Every call to 911 for medical assistance made in the city or the surrounding area results in a crew from Oxford Emergency Medical Services climbing into a white and gold ambulance and racing toward whoever's hurt.

But the nonprofit ambulance agency — which has existed in Oxford in some form since at least 1970 — as well as its current board of directors have been drawn into litigation in recent weeks. An office manager working at the agency in June filed a lawsuit against the directors, alleging they habitually ignored state laws regarding public meetings as well as a city policy on nepotism.

That employee and the agency's other office manager were put on paid leave the morning after a recent board meeting. Board members voted unanimously at that meeting to retain a Birmingham law firm to represent them. One of those lawyers, to whom all requests for comment on the suit have been referred, did not know who would replace the two women, who say they handled all of the agency's office work, including bookkeeping and billing.

The agency's director, Ricky Howell, declined to speak to a reporter this week. Howell referred questions to two attorneys — one representing him, and the other representing the board as a whole.

## 'That confused everyone'

Speaking to a reporter recently, the two suspended employees described a close-knit operation made tense by decisions from Howell and the board of directors concerning employees.

Despite that tension, the employees said, the agency's paramedics remain focused on doing their jobs.

"Our guys are totally professional down there," said Missy Hall, the office manager who filed the civil suit against the agency. "It leaves them with questions, and you can't blame them for that ... honestly, no one sits around and talks about it at work."

The agency's 24 full-time paramedics work 24-hour shifts, Hall said, from a city-owned building along U.S. 78 on Oxford's west side.

The paramedics get two days off after each shift — and those shifts can be hectic, with more than 40 calls for help answered some days.

"That's a really busy shift," Hall said. She compared the operation to Sparks' Fire Department: "When a call comes in, you go."

Hall has worked alongside Ann Moody, the agency's office manager of two decades, for more than two years. Both were placed on paid leave after a July 6 board meeting, but Moody is not involved in Hall's suit.

In that suit, Hall alleges that the agency's board members held a meeting April 19, but gave no public notice of that meeting.

Hall believes the board hired Howell's daughter for a full time position at the agency, and promoted a paramedic to training officer — a new position within the agency.

Shortly thereafter, the training officer received a nearly 50 percent pay raise and choice working hours.

"It's been questionable for months now what it is that he actually does," Hall said. It seemed the man was responsible for more than making sure paramedics were adequately trained, Hall said, when he started disciplining employees.

"That confused everyone," said Hall. "If he was given that authority, none of us were told."



Lance Bell, an attorney representing Howell, on Wednesday said by email he did not have time to answer questions about the training officer's employment.

Hall's attorney, Ted Copland, on Wednesday asked for a judge's verdict in his client's favor. He argued that the defendants, Oxford Emergency Medical Services' board of directors, had failed to make any response to Hall's suit within the time allowed by law.

Attorneys for the agency later the same day argued against Copland's motion, saying in court documents that Hall's complaint provides no claim that a judge could satisfy. The filing did not address her allegations, but asked the case be dismissed.

Writing by email Wednesday, Mark White of the Birmingham law firm White, Arnold & Dowd, called Copland's filing "spurious." White said he would be traveling to the Alabama State Bar's annual meeting, and did not have time to answer other questions.

Bell, Howell's attorney, emailed a statement Wednesday.

"When individuals start running to the media in order to fabricate stories to further their cause then they are scared of the true facts," Bell wrote. "These individuals will be held accountable for the vicious lies they are spreading. We look forward to the future and bringing the true facts to light at the appropriate time."

Circuit judge Shannon Page has set an Aug. 8 hearing on the agency attorneys' request for dismissal.

## Beyond city limits

Hall's lawsuit and the agency's reaction to it — suspending Hall and Moody, who both characterized that move as "retaliation" — has raised other questions about Oxford EMS.

The employees say whether the agency is a part of the city's government or separate from it has been a gray area for as long as they've worked there. Oxford's mayor has said he believes it separate.

But the City Council in 2009 approved an application for incorporation of the agency, though it already existed. Mayor Alton Craft has said that move was made to allow for Oxford EMS employees to have access to Alabama's retirement system. State and local government employees as well as public education employees are members of that system.

Joel Laird, a retired attorney and former circuit court judge who has protested a request to state regulators by Oxford EMS to expand its services, believes the 2009 incorporation is invalid.

Laird has argued that no state law allows for the creation of an agency like Oxford EMS, which he alleges operates throughout Calhoun County and far beyond the city limits of Oxford.

The application made in 2009, meanwhile, noted that the three people interested in forming Oxford EMS — Moody, Howell, and then director Randy Third — all were "duly qualified" electors of the city of Oxford.

But Moody lives inside Talladega city limits, she said recently. She's never lived in Oxford.

Moody says that in 2009, Third asked her to sign on as a founder of the EMS agency. Neither he nor anyone else told her she needed to be a resident of the city of Oxford.

"What I was told was that ... this was the best way to keep the business functioning," Moody said.

Reached by phone Wednesday, Third declined to comment before consulting with his attorney. While not involved in the suit directly, Third said he sought a lawyer after being asked by Laird to sign an affidavit in the case.

· Staff writer Zach Tyler: 256-235-3564. On Twitter @ZTyler_Star.

Tags    Attorney   Law   Work   Legislation   Employee   Randy Third   Lance Bell   Lawsuit   Ann Moody   Ricky Howell

Zach Tyler




ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/judge-hears-arguments-in-suit-ag
ems/article_8647fca4-7c80-11e7-a410-d3a34c34199e.html

# Judge hears arguments in suit against Oxford EMS

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Aug 8, 2017



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station. (Kirsten Fiscus / The Anniston Star)

A lawsuit against Oxford Emergency Medical Services may hinge on the question of whether the agency's board is subject to Alabama's Open Meetings Act.

The agency's lawyers told a Calhoun County circuit judge during a hearing Tuesday that the board was not subject to that act. The Anniston attorney representing the woman who filed the suit, meanwhile, disagrees.

The lawsuit alleges that the agency's board of directors frequently ignored the act, which requires governmental bodies to meet and deliberate in the open. The suit was filed by Melissa Hall, who was an office manager for the agency until her suspension in early July.

Circuit Judge Brian Howell held the Tuesday hearing to consider a request by Oxford EMS lawyers to dismiss the suit.

### 📄 Litigation not affecting Oxford EMS operations, suspended employees say

The agency's lawyers argued first that Oxford EMS isn't subject to act — and even if it were, Hall hasn't met the standard of harm required for suits brought under it.

"It is a unique entity," Mark White, of the firm White, Arnold & Dowd, said of Oxford EMS to Howell. When the judge asked about public support for the agency, White said it receives approximately 15 percent of its yearly budget from the city of Oxford.

Ted Copland, the attorney representing Hall, criticized the way in which White characterized the agency, noting that it also uses buildings owned by the city and receives fuel and maintenance for its ambulances from Oxford.

Copland requested a preliminary hearing at which he'd build Hall's case. He argued that the Open Meetings Act required such a hearing.

White, though, cited a 2013 suit that went to the Alabama Supreme Court, but was tossed before any such hearing was held — for the same reason he argued that Hall's suit should be dismissed.

"The Supreme Court basically says you have to dismiss this case," White said.

Copland repeated claims made in his client's complaint that White and Lance Bell, a Pell City-based attorney, were initially hired at a meeting held without any public notice. Copland told Howell that he'd like to discuss the reason they were hired before Hall's suit was filed, but that he'd only do so privately.

Copland declined to say more about the issue after the hearing. White told Howell that the issue had "nothing to do with the matter before you."

Howell advised Copland to either enter the information he wished to share into the court record as a sealed filing or email it to him. The judge said he'd set another hearing, either for later this week or early next, to decide whether Hall's suit could proceed to the hearing Copland requested.

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-chief-cleared-by-ethi
b431-11e7-8ef1-87e1376f358a.html

# Oxford EMS chief cleared by Ethics Commission

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Oct 18, 2017

PLAINTIFF'S
EXHIBIT

6



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station. (Kirsten Fiscus / The Anniston Star)

The Alabama Ethics Commission this month cleared the director of Oxford Emergency Medical Services of alleged ethics law violations, according to a letter from the commission.

After seeing the results of an investigation, the commission's members found "there was not probable cause" to believe that Ricky Howell violated the state's ethics law.

The law guards against use of public office for personal or familial gain and bribery and sets restrictions on lobbying efforts, among other measures. Former Alabama Speaker of the House Mike Hubbard was found guilty of violating the law in 2016 and was sentenced to four years in prison.

The commission is not required to publish details of any complaint against an official found to be without merit, so it's unclear how Howell was alleged to have violated the law.

The commission's executive director, Tom Albritton, confirmed the letter Wednesday.

Lance Bell, the Pell City lawyer who represented Howell during the commission's investigation, said Wednesday by phone that learning of the decision "felt great."



**ACE** The helpful place.

ACE HAS EVERYTHING YOU NEED FOR A GREAT LAWN

RED HOT BUYS

Miracle-Gro® Potting Mix with Fertilizer, 2 Cu. Ft.
7161052
Limit 60 at this price

REG. $12⁹⁹
SALE PRICE $9⁹⁹

**Oxford Lumber** ACE Hardware

Roanoke  Jacksonville  Talladega
WWW.OXFORDLUMBER.COM

"I knew from the beginning that it was a witch hunt," said Bell, hired by the Oxford EMS board of directors to defend Howell, who he said did nothing wrong.

Bell called the allegations made against Howell false, and said that he'd argued Howell and Oxford EMS were not bound by the state's ethics law because the agency is "not part of the city of Oxford."

The agency receives money from the city "basically for equipment," Bell said, and none of that money was spent on defending against any allegations made against Oxford EMS or Howell, he said.

His client, the nonprofit agency Howell heads and its board of directors, meanwhile, remain at the center of a lawsuit brought by an employee.

Oxford EMS office manager Melissa "Missy" Hall has alleged that the agency's board habitually ignored the state's Open Meetings Act, which requires public bodies to do business in meetings open and advertised to the public.

After initial arguments on whether the agency is bound by the act and if Hall had the right to bring suit against it, the case remains before Circuit Judge Brian Howell.



Staff writer Zach Tyler: 256-235-3564. On Twitter @ZTyler_Star.

Tags  | Commission | | Law | | Criminal Law | | Ricky Howell | | Alabama Ethics Commission | | Lawsuit | | Ems | | Tom Albritton |
| Lance Bell | | Ethics | | Oxford | | Brian Howell | | Allegation |

Zach Tyler



THIS DAY IN HISTORY

1967

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/judge-dismisses-suit-against-oxfc
11e7-b53b-ff8ed4670232.html

# Judge dismisses suit against Oxford EMS



**PLAINTIFF'S EXHIBIT**

7

By Zach Tyler, Star Staff Writer, ztyler@annistonstar.com

Nov 17, 2017



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station. (Kirsten Fiscus / The Anniston Star)

A judge this week dismissed a lawsuit against the Oxford Emergency Medical Services' Board of Directors.

Circuit judge Brian Howell ruled that the office manager who filed the suit hadn't sufficiently shown how the board's alleged actions harmed her.

The agency employee, Melissa "Missy" Hall, filed suit against its board in June, alleging that its members frequently disregarded Alabama's Open Meetings Act. The act requires government bodies like city councils meet and deliberate in the open, and provide public notice of those meetings.

Hall's suit alleged that the board failed to give that notice and to keep records from its meetings.

In a ruling filed Tuesday, Howell referenced the standard a private citizen must meet to bring a lawsuit under the act: He or she must show they were more harmed by the alleged violation than any other member of the public.

Hall's Anniston attorney had argued in court filings and hearings before Howell that as the agency's office manager, she had experienced greater harm.

The judge in his ruling wrote that argument was "speculative at best," and failed to satisfy the standard required.

Efforts were unsuccessful Friday to reach Hall or her attorney.

Mark White, a Birmingham-based attorney hired by the board to defend against the suit, called Howell's ruling "an appropriate opinion."

"The law, from day one, has clearly favored our position," White said by phone. He had repeatedly argued that Hall could not meet the standard of harm. Even if she could, Oxford EMS is not a governmental agency, he argued, and therefore is not bound the act.

The nonprofit agency's chief, meanwhile, in October was cleared by the Alabama Ethics Commission of alleged ethics law violations.

The law guards against use of public office for personal or familial gain and bribery and sets restrictions on lobbying efforts, among other measures.

Hall and one other agency employee in July was suspended with pay, and remains suspended today, White said.

Her suspension "had nothing to do with the lawsuit," White said, but was related to an ongoing internal investigation. He expects that investigation to conclude by year's end.

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/a-second-former-oxford-ems-em
organization/article_9384d430-9ced-11e8-9ee0-1380749ce8be.html

# A second former Oxford EMS employee sues organization

By Daniel Gaddy, Assistant Metro Editor, dgaddy@annistonstar.com

Aug 10, 2018

**PLAINTIFF'S EXHIBIT**

_8_

A second former Oxford EMS employee on Wednesday filed suit against the ambulance service, saying its leaders fired her in retaliation for her participation in an Alabama Ethics Commission complaint against her boss.

Anniston attorney Joel Laird filed the suit on behalf of Ann Moody, a former office manager for Oxford EMS.

Laird, a former Calhoun County judge, also represents former Oxford EMS employee Melissa Hall. Hall claims in a separate suit filed July 31 that Oxford EMS officials wrongfully terminated her.

Both the suits also name the city of Oxford as a defendant. Each alleges that Oxford EMS was improperly formed and that the Oxford City Council didn't have the authority to establish the service when it did.

Mark White, an attorney for Oxford EMS, said the organization would continue to be its community's first responders.

"If the plaintiffs are trying to limit first responders being available to the city, that's a tragedy," White said.

Ron Allen, the city attorney for Oxford, said Oxford EMS is a separate corporate entity and the city is in no way liable in the matter.

"They have their own board and we have no involvement in the everyday operations," he said.

Asked about the validity of the ambulance service's incorporation, Allen said, "They are in fact who they say they are. But whether they are or aren't doesn't reflect on the city because we don't control Oxford EMS."



*In-home care for your loved ones*

*Companionship, meal planning and preparation, transportation, light housekeeping, errands, safe bathing, medication reminders, and more...*

**Signature**
In-Home Care, Inc.
256•831•3250
www.signatureinhomecare.com
Private pay, LTC insurance, VA, and Medicaid Waiver

Oxford EMS adopted its name in 1990 to reflect the organization's decision at that time to secure licensure from the state Department of Public Health. Known previously as the Oxford Emergency and Rescue Squad, under that name it operated according to the standards of the Alabama Association of Rescue Squads.

Efforts to reach Laird on Friday were not immediately successful.

Both suits ask for punitive damages and the dissolution of the ambulance service.

Hall brought a suit against the Oxford EMS board of directors in 2017, saying the board had violated the Alabama Open Meetings Act. A judge dismissed that suit, finding that Hall did not meet the requirements for a private citizen to sue under the act. Anyone bringing such a suit must show they were more harmed by the alleged violation than any other member of the public, the judge wrote in his ruling.

Oxford EMS director Ricky Howell was cleared of alleged ethics law violations in 2017. The commission members found "there was not probable cause" to believe that Howell violated the state's ethics law.

According to Moody's suit, she also filed an ethics complaint against Howell. According to the document, the commission found that it did not have jurisdiction because Howell is not paid with public funds so he doesn't meet the definition of a public employee.

In her suit filed Wednesday, Moody asks for a declaratory judgement stating Oxford EMS workers are public employees.

DOCUMENT 33

3/19/2020          Former Oxford EMS employee alleges misuse of funds in new suit | The ...



ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/the_daily_home/former-oxford-ems-employee
new/article_72dfd024-96bf-11e8-be0d-9b913fdd49f1.html

# Former Oxford EMS employee alleges misuse of funds in new suit

By Daniel Gaddy, Assistant Metro Editor, dgaddy@annistonstar.com

Aug 2, 2018

PLAINTIFF'S
EXHIBIT

9



The Oxford EMS. Stephen Gross / The Anniston Star

A former Oxford EMS employee this week filed a second suit against the ambulance service, alleging misuse of public funds and wrongful termination.

The newest suit, which also includes the city of Oxford and its City Council, also alleges that Oxford EMS was improperly formed and the Oxford City Council didn't have the authority to establish it when it did.

Melissa Hall was an officer manager for Oxford EMS until July 2017. She alleges in a suit filed Monday she was fired after reporting to city and Oxford EMS officials that "she was asked to do things she believed in good faith to be unethical and unlawful."

In the complaint, Hall requests punitive damages, the dissolution of the agency and a return of misused property and funds. The suit also asks the agency to produce a "writ of quo warranto," a document that would show the agency's authority to run an ambulance service.

Reached by phone Thursday, Oxford city attorney Ron Allen said he had just received the complaint and could not comment on it without further inspection.

Mark White, a Birmingham attorney representing the Oxford EMS board of directors, declined to comment other than pointing out Hall's previous legal actions against the agency.

"This will be round four, and we're three-and-oh," he said.



GOT WEEDS?
GET STARTED SPECIAL:
Only $34.95 *
ENVYLawn
Fertilization, Weed, Insect & Disease Control
256-820-4633

Representing Hall is Anniston attorney and former Calhoun County Circuit Judge Joel Laird. Reached by phone Thursday, Laird said he feels confident his client will get the relief she asks for.

"I'm not going to file something frivolous or that doesn't have merit," he said.

Laird said Thursday his office was in the process of filing motions for discovery of evidence and testimony.

"There's a lot more to the story that, hopefully, will eventually come out," he said.

Before becoming the Oxford EMS manager in 2014, Hall was Laird's judicial assistant when he was a circuit judge and his legal assistant when he left the bench, according to Laird.

Hall brought a suit against the Oxford EMS board of directors in 2017, saying the board violated the Alabama Open Meetings Act. A judge dismissed the suit, however, saying Hall did not meet the requirements for a private citizen to bring a lawsuit under the act: He or she must show they were more harmed by the alleged violation than any other member of the public.

Oxford EMS Director Ricky Howell was cleared of alleged ethics law violations in 2017. After seeing the results of an investigation, the commission's members found "there was not probable cause" to believe Howell violated the state's ethics law.

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/anniston/anniston-ems-sues-oxford-aml
interference/article_49f02af8-a1df-11e8-9b00-c383c5d1f0fb.html

# Anniston EMS sues Oxford ambulance service, alleging interference

By Daniel Gaddy, Assistant Metro Editor, dgaddy@annistonstar.com

Aug 16, 2018

PLAINTIFF'S
EXHIBIT
10



Anniston EMS has filed the third suit against Oxford EMS claiming the agency was unlawfully formed. The Anniston service
also claims that a Regional Medical Center employee conspired to directly benefit Oxford EMS over Anniston EMS

Trent Penny/The Anniston Star

Ambulance service Anniston EMS on Thursday sued competitor Oxford EMS, claiming the
agency's leaders as well as a Regional Medical Center employee "interfered with contracts
and/or business relations" of Anniston EMS.

The Anniston EMS suit shares a claim with two separate suits filed by former Oxford EMS
employees against the ambulance service. All three contend that Oxford EMS was unlawfully
incorporated and doesn't have the authority to operate in the community.

Both the two former employees and Anniston EMS are represented by Anniston attorney and
former Calhoun County judge Joel Laird.

The action Anniston EMS brings is the first of the three suits to name RMC employee Debra Holmes as a defendant. The complaint states that in 2014 Holmes "began the process of intentionally interfering with plaintiff's business relations with Regional Medical Center and others by assisting and collaborating with the other defendants in this case."

The Anniston EMS suit asks for damages to compensate the service for lost business as well as punitive damages decided by a jury.

Anniston EMS director Johnny Warren referred questions about the suit to Laird. The Star's efforts to reach Laird were not immediately successful Thursday.

Asked about the suit, a spokeswoman for RMC said she would look into the matter and try to find the appropriate person to comment.

Mark White, a Birmingham attorney representing Oxford EMS, said "this has all been about somebody that's mad because the quality of service was so superior to Anniston EMS."

"Everybody has suspected and this proves that this is all about someone trying to get an advantage because they can't deliver quality service as a competitor. They lost the business because they didn't perform the service," White said of Anniston EMS.

Anniston EMS is a for-profit company headquartered in Anniston, while Oxford EMS is a nonprofit that has received support from that city's government. The two services have competed vigorously in the past, including in a 2014 effort by both groups to serve the Quad Cities area east of the two cities.

DOCUMENT 35

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

**FIREHOUSE**



**PLAINTIFF'S EXHIBIT**

_11_

HOME | OPERATIONS & TRAINING | EMS

# AL City Approves More Money for Private EMS Service

It's the third time this year Oxford Emergency Medical Services has received money, and over the years, the funding has helped improve response times and expand coverage.

**By** Ben Nunnally
**Source** The Anniston Star, Ala.

Oct 29th, 2019



**FIREHOUSE**

Three members of the City Council — minus Council President Chris Spurlin and Councilman Phil Gardner, who were not present — unanimously voted to appropriate $167,677 from the city general fund for Oxford EMS in a brief, called meeting.

In January the council held another called meeting in which it gave $113,281 to the service, which has existed in some form in the city since 1970, with its current incarnation founded in 2009. Another $65,000 was given in August. Monday's spending was the first money appropriated in the 2020 fiscal year, which started Oct. 1.

Councilman Steven Waits, who presided in place of Spurlin, said after the meeting that Oxford EMS came to the city "with a financial need," which he said compelled the City Council to help.

"One of our greatest priorities is to ensure that we provide not only adequate but excellent public safety," Waits said. "We've invested a tremendous amount into the Fire Department, into the Police Department, and it's something our citizens have come to expect. It's something they deserve."

Money given to the company over the years has helped improve its average emergency response times, he said, though he didn't have specific numbers on hand. The service also expanded to add a second station in Bynum, he said, widening its coverage area.

However, the EMS service is a private company, not an arm of the city. Waits deferred questions about the service's budget and operations to Oxford EMS administrators. Attempts to reach Director Ricky Howell were unsuccessful Monday.

An attorney for the service, Mark White, told Circuit Court Judge Brian Howell in 2017 that public money accounted for about 15 percent of the company's budget, during one of a handful of legal battles the company has fought in the last few years.

Councilman Mike Henderson, talking by phone Monday, estimated that the city had paid $600,000 to the company last year. He said he thought the company's requests for money might reach about that much during this fiscal year, too. The overall operation isn't performing at the level it needs to, Henderson said.

"Probably if you poll most of the residents of Oxford they would think Oxford EMS is part of the city, but it's not," he said. "We don't want to see them fail, we don't want to see anybody lose their jobs or anything like that, but we can't keep absorbing the losses they're having."

He said the council has been told by the service's board that the Bynum location is struggling, with the cost of staffing the location outpacing income from emergency calls. Also floated as a disadvantage in conversation, Henderson said, is that Oxford has no hospital of its own, so ambulances are routed to Anniston's Regional Medical Center. Representatives have previously told the council that the service doesn't charge for calls that turn out to be false alarms, which makes some calls a complete loss. He said that fees from the company's legal battles may have sapped its reserves.

The council has discussed alternatives, Henderson said, like forming a city-owned ambulance service, or inviting another ambulance service to work in the area.

**FIREHOUSE**

The prior year's budget nixed budgeted appropriations altogether, while the FY2018 budget provided $196,000, including $120,000 paid out over the year, with the rest divided amongst maintenance, oil and phone service. That was a cut from prior years, which topped out at $295,000 in the budget.

Henderson has been critical of the heavy investment of public money in a private organization in the past, but he said that the City Council provided money to Oxford EMS in good faith that it could help get the business back on track.

"You've got to have an EMS provider in your city," Henderson said, "and right now we're still trying to do what we can to support it."

———

©2019 The Anniston Star (Anniston, Ala.)

Visit The Anniston Star (Anniston, Ala.) at www.annistonstar.com

Distributed by Tribune Content Agency, LLC.

## VOICE YOUR OPINION!

**This site requires you to login or register to post a comment.**

No comments have been added yet. Want to start the conversation?

## Sign up for Firehouse eNewsletters

Email address                                    SIGN UP

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

12



PRINT
ONLINE (/)
EXPO

**OPERATIONS**

# Ala. EMS Agency Fails to Provide Insurance to Employees



12/22/2019

Ben Nunnally

Tribune News Service

(/#facebook)     (/#twitter)     (/#linkedin)
(/#email)     (/#print)



## Related Content

N.J. EMS Chief Charged for Insurance Fraud, Terroristic Threats (/news/1221603/nj-ems-chief-charged-insurance-fraud-terroristic-threats)

Western Pennsylvania Ambulance Services Bypass Direct Insurance Payments (/news/12311929/western-pennsylvania-ambulance-services-bypass-direct-insurance-payments)

N.Y. Volunteer Firefighters Required to Pay for New Insurance Coverage for Cancer Diagnoses (/news/220237/ny-volunteer-firefighters-required-pay-new-insurance-coverage-cancer-diagnoses)

The Anniston Star, Ala.

A month without medicine started with a nurse telling Adrienne Ragains that her family's insurance through Oxford Emergency Medical Service had lapsed—again.

She'd taken her son, one of five children, to Children's of Alabama in Birmingham in July for a shot, one that 16-year-old Noah needs to manage his ulcerative colitis—a condition that inflames the colon with ulcers, may be life-threatening and is incurable, according to the

Mayo Clinic. Her healthcare provider called at the end of May for prior authorization from Blue Cross Blue Shield, and Adrienne arrived at the hospital assuming it had been granted. Instead, she and Noah learned their work-provided coverage had lapsed.

"I was like, 'That can't be; my husband pays,'" Ragains said.

Pay stubs she provided stretching back several months confirm that her husband had at least $500 withheld from his Oxford EMS paychecks every month. The service had been collecting the money, but it wasn't being paid into their coverage, she said.

Her husband, still at the hospital, called Oxford EMS director Ricky Howell and other office managers about the problem, she said. They told the family they weren't sure what the issue was; maybe the check had been lost in the mail, they'd suggested at least once.

It took a few days to sort it out, followed by another two weeks waiting for another prior authorization request to roll through the system.

Ulcerative colitis can be a painful condition, especially without medication to control the flare-ups, Ragains said. Time without medication comes with bleeding, diarrhea, cramping, bloating—a litany of ailments only managed through treatment. Too long without medication can cause so much damage to the colon that it has to be surgically removed, and replaced with a colostomy bag. Ragains was frightened for her son.

"Just the thought he could relapse and not go into remission—the thought of him having to wear a bag is so incredibly terrifying," she said. "I will go to the ends of the Earth to make sure he has healthcare."

This wasn't the first time coverage lapsed; in June, Ragains learned she didn't have insurance coverage due to nonpayment after she underwent back surgery. Oxford EMS management offered excuses then, too, she said. Management floated at least once that the family pay their bill outright for the Oxford EMS to reimburse them later. Ragains said it hasn't come to that. It happened again in October, when she went to the doctor for a respiratory infection. Usually, if healthcare providers run the claim again a week or so later, it will go through. The October bill still hasn't been reckoned with, she said.

Then there have been pharmacy calls saying her family's insurance has been denied, at least twice.

"We usually have to tell them this happens all the time, just rerun it," Ragains said. "The fix was to pay the bill."

Ragains' husband declined to be interviewed for this story.

The Ragainses were not the only Oxford EMS family to contact The Star about insurance problems, though Adrienne Ragains was the only one willing to speak publicly. The others feared retaliation, they said, but confirmed similar problems when visiting doctor's offices or picking up medicine.

Ragains wasn't sure whether all employees were affected by the lapses or not, but Koko Mackin, vice president of corporate communications for Blue Cross Blue Shield of Alabama, wrote in an email that accounts in customer groups are paid for all covered employees at once.

She declined to provide specific information about the status of Oxford EMS's payment history.

Repeated attempts to reach Ricky Howell were unsuccessful Friday, as have been repeated efforts to reach him for earlier stories.

"This is what led us to look deeper. 'If that's not being paid, what else isn't getting paid?'" Ragains said. "At that time we didn't know that retirement wasn't being paid in, either."

Oxford EMS was founded in 1970 as the Oxford Emergency and Rescue Squad; it operated nearly 40 years before it was reincorporated by the city of Oxford in 2009, allowing its employees to participate in the Retirement Systems of Alabama, reserved for government and public entities in the state.

Ragains provided a letter from the RSA her family received in July that showed no payments made into the retirement system on her husband's behalf since January this year. Pay stubs show about $200 withheld every month from his checks, though.

Bill Kelley, director of benefits at the RSA, confirmed that Oxford EMS lapsed in its payments starting in January this year. In November, he wrote in an email, the service brought its account up to date.

Ragains had been concerned about her husband's vestment in the system. Oxford Councilman Mike Henderson had said the reincorporation, which happened outside of his tenure on the governing body, was meant to attract new employees. Ragains' husband was hired around that time; nonpayment pushed back his vestment in the system, attained at 10 years of enrollment and payment, by almost a year.

According to Kelley, employee vestment should be secure.

"I am not sure what caused the delinquency, but OEMS is now current with its contributions," Kelley wrote. "There will be no adverse impact to its employees."

Oxford EMS also withholds about $70 per month to pay Aflac for the Ragains short-term disability and accident insurance; Ragains provided a notice of nonpayment sent by Aflac, also from July, showing three months past due. Oxford EMS administers the account on her husband's behalf, she said. The family received a phone call from Oxford EMS to ignore that notice just before it arrived, she said, as it had been handled.

Oxford's ambulance service is no stranger to money trouble. The service has often requested appropriations from the city of Oxford — its status as a department of the city or a private nonprofit is a point of contention—totalling nearly $500,000 this year alone, including both budgeted and emergency payments.

The City Council has cut off money to the service in recent months; in November, Oxford EMS requested an additional $300,000 per year, (https://www.annistonstar.com/news/oxford/oxford-ems-getting-nothing-more-from-city/article_f1b9a552-10f6-11ea-82a7-bf53bbb3ec77.html) a request that died during a council meeting when members wouldn't move to hold a vote. Last week the service asked for $50,000, a request again denied without reaching a vote in a council meeting.

Council members have discussed the possibility that at least some of the service's money trouble ties back to legal defense costs in lawsuits filed over the last two years.

The service has been swamped with civil suits; both Ann Moody and Melissa Hall, office managers for the ambulance service, were fired soon after they alleged unethical business practices. Lawsuits filed by the two last year were recently joined into a single suit against the service, its board of directors and Howell.

Anniston Emergency Medical Service, a for-profit, private ambulance company, sued Oxford EMS in 2018, alleging interference in Anniston EMS contracts and business.

Emergency Medical Billing, a company in Lafayette, filed a lawsuit in November against Oxford EMS for unpaid billing work totaling $30,201.

In July, an Anniston man sued the Oxford EMS, alleging in the lawsuit that medical personnel had not responded effectively to his wife's heart attack in 2018.

Ragains isn't so upset about the inconvenience of the insurance lapses as she is about the possibility that, one day, Oxford EMS won't be able to patch the problem with a rushed payment.

"I'm angry," she said. "It's my children. I'm supposed to protect my children. I'm supposed to take care of them and provide for them."

She's been hesitant to take the kids to the doctor for routine problems, like a mild ear infection she successfully treated with over-the-counter medicine, for fear they'll be confronted with rejected insurance claims again.

The irony that her family can't ensure they'll receive health benefits—both she and her husband are in the medical field, she said—isn't lost on her.

"My husband works hard for his money," she said. He works, she said, to help people get medical care. "But when it comes to our family, where do we get our medical attention?"

Log in (/user/login?destination=/news/1223698/ala-ems-agency-fails-provide-insurance-employees%23comment-form) or register (/user/register?destination=/news/1223698/ala-ems-agency-fails-provide-insurance-employees%23comment-form) to post comments

## OPERATIONS TOP STORIES

Wash. City Settles on $150K for Family of Intubated Dead Patient (/news/1222103/wash-city-settles-150k-family-intubated-dead-patient)

One Dead in S.C. Ambulance, Pedestrian Collision (/news/1223265/one-dead-sc-ambulance-pedestrian-collision)

Penn. College Launches Student EMS Squad (/news/1222786/penn-college-launches-student-ems-squad)

Penn. Officials Want PTO for Responders Leaving Work for MCIs (/news/1222039/penn-officials-want-pto-responders-leaving-work-mcis)

Tex. Paramedics Hospitalized After Collision With Truck (/news/1222212/tex-paramedics-hospitalized-after-collision-truck)

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-employees-and-famil
lapses/article_2007a3de-244b-11ea-b2e4-e30ca90886e2.html

# Oxford EMS employees and families endure insurance lapses

## Family reports gaps in both retirement and health insurance

By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com

Dec 22, 2019

PLAINTIFF'S
EXHIBIT
13



Noah Ragains with his mother, Adrienne.

Trent Penny/The Anniston Star

A month without medicine started wit[h]
insurance through Oxford Emergency [

She'd taken her son, one of five childre[n]
a shot, one that 16-year-old Noah need[s]
inflames the colon with ulcers, may be [



Mayo Clinic. Her health care provider called at the end of May for prior authorization from Blue Cross Blue Shield, and Adrienne arrived at the hospital assuming it had been granted. Instead, she and Noah learned their work-provided coverage had lapsed.

"I was like, 'That can't be; my husband pays,'" Ragains said.

Pay stubs she provided stretching back several months confirm that her husband had at least $500 withheld from his Oxford EMS paychecks every month. The service had been collecting the money, but it wasn't being paid into their coverage, she said.

Her husband, still at the hospital, called Oxford EMS director Ricky Howell and other office managers about the problem, she said. They told the family they weren't sure what the issue was; maybe the check had been lost in the mail, they'd suggested at least once.

It took a few days to sort it out, followed by another two weeks waiting for another prior authorization request to roll through the system.

Ulcerative colitis can be a painful condition, especially without medication to control the flare-ups, Ragains said. Time without medication comes with bleeding, diarrhea, cramping, bloating — a litany of ailments only managed through treatment. Too long without medication can cause so much damage to the colon that it has to be surgically removed, and replaced with a colostomy bag. Ragains was frightened for her son.

"Just the thought he could relapse and not go into remission — the thought of him having to wear a bag is so incredibly terrifying," she said. "I will go to the ends of the Earth to make sure he has health care."

This wasn't the first time coverage lapsed; in June, Ragains learned she didn't have insurance coverage due to nonpayment after she underwent back surgery. Oxford EMS management offered excuses then, too, she said. Ma
bill outright for the Oxford EMS to rei
It happened again in October, when sh
Usually, if health care providers run th
October bill still hasn't been reckoned

Then there have been pharmacy calls s
twice.

THIS DAY IN HISTORY

16

MARCH

"We usually have to tell them this happens all the time, just rerun it," Ragains said. "The fix was to pay the bill."

Ragains' husband declined to be interviewed for this story.

The Ragainses were not the only Oxford EMS family to contact The Star about insurance problems, though Adrienne Ragains was the only one willing to speak publicly. The others feared retaliation, they said, but confirmed similar problems when visiting doctor's offices or picking up medicine.

Ragains wasn't sure whether all employees were affected by the lapses or not, but Koko Mackin, vice president of corporate communications for Blue Cross Blue Shield of Alabama, wrote in an email that accounts in customer groups are paid for all covered employees at once.

She declined to provide specific information about the status of Oxford EMS's payment history.

Repeated attempts to reach Ricky Howell were unsuccessful Friday, as have been repeated efforts to reach him for earlier stories.

## A pattern of nonpayment

"This is what led us to look deeper. 'If that's not being paid, what else isn't getting paid?'" Ragains said. "At that time we didn't know that retirement wasn't being paid in, either."

Oxford EMS was founded in 1970 as the Oxford Emergency and Rescue Squad; it operated nearly 40 years before it was reincorporated by the city of Oxford in 2009, allowing its employees to participate in the Retirement Systems of Alabama, reserved for government and public entities in the state.

Ragains provided a letter from the RS/ made into the retirement system on he show about $200 withheld every mont





Bill Kelley, director of benefits at the RSA, confirmed that Oxford EMS lapsed in its payments starting in January this year. In November, be wrote in an email, the service brought its account up to date.

Ragains had been concerned about her husband's vestment in the system. Oxford Councilman Mike Henderson had said the reincorporation, which happened outside of his tenure on the governing body, was meant to attract new employees. Ragains' husband was hired around that time; nonpayment pushed back his vestment in the system, attained at 10 years of enrollment and payment, by a

According to Kelley, employee vestmen

"I am not sure what caused the delinqu

contributions," Kelley wrote. "There wi

Oxford EMS also withholds about $70

disability and accident insurance; Raga

also from July, showing three months past due. Oxford EMS administers the account on her



THIS DAY IN HISTORY

16

MARCH

husband's behalf, she said. The family received a phone call from Oxford EMS to ignore that notice just before it arrived, she said, as it had been handled.

## Money matters

Oxford's ambulance service is no stranger to money trouble. The service has often requested appropriations from the city of Oxford — its status as a department of the city or a private nonprofit is a point of contention — totalling nearly $500,000 this year alone, including both budgeted and emergency payments.

The City Council has cut off money to the service in recent months; in November, Oxford EMS requested an additional $300,000 per year, a request that died during a council meeting when members wouldn't move to hold a vote. Last week the service asked for $50,000, a request again denied without reaching a vote in a council meeting.

Council members have discussed the possibility that at least some of the service's money trouble ties back to legal defense costs in lawsuits filed over the last two years.

The service has been swamped with civil suits; both Ann Moody and Melissa Hall, office managers for the ambulance service, were fired soon after they alleged unethical business practices. Lawsuits filed by the two last year were recently joined into a single suit against the service, its board of directors and Howell.

Anniston Emergency Medical Service, a for-profit, private ambulance company, sued Oxford EMS in 2018, alleging interference in Anniston EMS contracts and business.

Emergency Medical Billing, a company in Lafayette, filed a lawsuit in November against Oxford EMS for unpaid billing work totaling $30,201.

In July, an Anniston man sued the Oxf[...]
personnel had not responded effective[...]



## 'I'm angry'

Ragains isn't so upset about the inconv[...]
possibility that, one day, Oxford EMS [...]
payment.

"I'm angry," she said. "It's my children. I'm supposed to protect my children. I'm supposed to take care of them and provide for them."

She's been hesitant to take the kids to the doctor for routine problems, like a mild ear infection she successfully treated with over-the-counter medicine, for fear they'll be confronted with rejected insurance claims again.

The irony that her family can't ensure they'll receive health benefits — both she and her husband are in the medical field, she said — isn't lost on her.

"My husband works hard for his money," she said. He works, she said, to help people get medical care. "But when it comes to our family, where do we get our medical attention?"

*Assistant Metro Editor Ben Nunnally: 256-235-3560.*

Tags    Ems   Adrienne Ragan

Employee   Lapse   F

Ben Nunnally





ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK



Topics > Funding

# Former EMS employee claims agency misuses public funds

**Melissa Hall claims she was fired after reporting to officials that "she was asked to do things she believed in good faith to be unethical and unlawful"**

Aug 4, 2018

By Daniel Gaddy
Anniston Star

OXFORD, Ala. — A former Oxford EMS employee this week filed a second suit against the ambulance service, alleging misuse of public funds and wrongful termination.

The newest suit, which also includes the city of Oxford and its City Council, also alleges that Oxford EMS was improperly formed and the Oxford City Council didn't have the authority to establish it when it did.



A former Oxford EMS employee this week filed a second suit against the ambulance service, alleging misuse of public funds and wrongful termination. (Photo/Oxford EMS)

Melissa Hall was an officer manager for Oxford EMS until July 2017. She alleges in a suit filed Monday that she was fired after reporting to city and Oxford EMS officials that "she was asked to do things she believed in good faith to be unethical and unlawful."

In the complaint, Hall requests punitive damages, the dissolution of the agency, and a return of misused property and funds. The suit also asks the agency to produce a "writ of quo warranto," a document that would show the agency's authority to run an ambulance service.

Reached by phone Thursday, Oxford city attorney Ron Allen said he had just received the complaint and could not comment on it without further inspection.

Mark White, a Birmingham attorney representing the Oxford EMS board of directors, declined to comment other than pointing out Hall's previous legal actions against the agency.

"This will be round four, and we're three-and-oh," he said.

Representing Hall is Anniston attorney and former Calhoun County circuit judge Joel Laird. Reached by phone Thursday, Laird said he feels confident his client will get the relief she asks for.

"I'm not going to file something frivolous or that doesn't have merit," he said.

Laird said Thursday that his office was in the process of filing motions for discovery of evidence and testimony.

"There's a lot more to the story that hopefully will eventually come out," he said.

Before becoming the Oxford EMS manager in 2014, Hall was Laird's judicial assistant when he was a circuit judge and his legal assistant when he left the bench, according to Laird.

Hall brought a suit against the Oxford EMS board of directors in 2017, saying the board violated the Alabama Open Meetings Act. A judge dismissed the suit, however, saying Hall did not meet the requirements for a private citizen to bring a lawsuit under the act: He or she must show they were more harmed by the alleged violation than any other member of the public.

Oxford EMS director Ricky Howell was cleared of alleged ethics law violations in 2017. After seeing the results of an investigation, the commission's members found "there was not probable cause" to believe that Howell violated the state's ethics law.

Copyright 2018 Anniston Star

Tags  ›  Funding  •  Lawsuit  •  Misconduct

**RECOMMENDED FOR YOU**


ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-gives-more-money-to-priv
service/article_1d9344e0-f9cc-11e9-9700-af5070aaa15f.html

TOP STORY

# Oxford gives more money to private EMS service

By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com

Oct 28, 2019



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station.
(Kirsten Fiscus/The Anniston Star/file)

**OXFORD** — The City Council agreed to give more money to Oxford Emergency Medical
Services on Monday morning, the third time it has done so this year.

Three members of the City Council — minus Council President Chris Spurlin and Councilman
Phil Gardner, who were not present — unanimously voted to appropriate $167,677 from the
city general fund for Oxford EMS in a brief, called meeting.

In January the council held another called meeting in which it gave $113,281 to the service,
which has existed in some form in the city since 1970, with its current incarnation founded in
2009. Another $65,000 was given in August. Monday's spending was the first money

appropriated in the 2020 fiscal year, which started Oct. 1.

Councilman Steven Waits, who presided in place of Spurlin, said after the meeting that Oxford EMS came to the city "with a financial need," which he said compelled the City Council to help.

"One of our greatest priorities is to ensure that we provide not only adequate but excellent public safety," Waits said. "We've invested a tremendous amount into the Fire Department, into the Police Department, and it's something our citizens have come to expect. It's something they deserve."

Money given to the company over the years has helped improve its average emergency response times, he said, though he didn't have specific numbers on hand. The service also expanded to add a second station in Bynum, he said, widening its coverage area.

However, the EMS service is a private company, not an arm of the city. Waits deferred questions about the service's budget and operations to Oxford EMS administrators. Attempts to reach Director Ricky Howell were unsuccessful Monday.

An attorney for the service, Mark White, told Circuit Court Judge Brian Howell in 2017 that public money accounted for about 15 percent of the company's budget, during one of a handful of legal battles the company has fought in the last few years.

Councilman Mike Henderson, talking by phone Monday, estimated that the city had paid $600,000 to the company last year. He said he thought the company's requests for money might reach about that much during this fiscal year, too. The overall operation isn't performing at the level it needs to, Henderson said.

"Probably if you poll most of the residents of Oxford they would think Oxford EMS is part of the city, but it's not," he said. "We don't want to see them fail, we don't want to see anybody lose their jobs or anything like that, but we can't keep absorbing the losses they're having."

He said the council has been told by the service's board that the Bynum location is struggling, with the cost of staffing the location outpacing income from emergency calls. Also floated as a disadvantage in conversation, Henderson said, is that Oxford has no hospital of its own, so ambulances are routed to Anniston's Regional Medical Center. Representatives have

previously told the council that the service doesn't charge for calls that turn out to be false alarms, which makes some calls a complete loss. He said that fees from the company's legal battles may have sapped its reserves.

The council has discussed alternatives, Henderson said, like forming a city-owned ambulance service, or inviting another ambulance service to work in the area.

The FY2020 budget already has $170,700 set aside for the agency. Of that total, $100,000 is earmarked for repair and maintenance — whether for vehicles or other property is unstated — and another $70,000 for gas and oil, with the last $700 for telephone service.

The prior year's budget nixed budgeted appropriations altogether, while the FY2018 budget provided $196,000, including $120,000 paid out over the year, with the rest divided amongst maintenance, oil and phone service. That was a cut from prior years, which topped out at $295,000 in the budget.

Henderson has been critical of the heavy investment of public money in a private organization in the past, but he said that the City Council provided money to Oxford EMS in good faith that it could help get the business back on track.

"You've got to have an EMS provider in your city," Henderson said, "and right now we're still trying to do what we can to support it."

*Assistant Metro Editor Ben Nunnally: 256-235-3560.*

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ambulance-service-s-origins-could-decide-lawsuits/article_90a7b

FEATURED

# Oxford ambulance service's origins could decide lawsuits

PLAINTIFF'S
EXHIBIT
16

By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com
Oct 30, 2019



The Oxford EMS. Stephen Gross / The Anniston Star

The nature of an Oxford ambulance service has been debated over the years, but now its status as a branch of city government could be at the heart of two lawsuits.

Oxford Emergency Medical Services was first formed in April 1970 as a domestic non-profit, according to the website of the Alabama Secretary of State. In 2009 the City Council approved changes to the incorporation of the service that seemed to bring it closer — if not completely — into the city. The company's directors at the time told a reporter the changes would help attract and keep good workers. The Secretary of State's website lists that incarnation as a public corporation. The city has, over the years, poured money into the service, most recently during a meeting Monday morning, when it appropriated more than $160,000 for the service.

But the status of the organization has become clouded over the years due to particulars of its operations, and one question has become a sticking point in two lawsuits against the company: Is Oxford EMS part of Oxford's city government or not?

"It's been my position all along and in filing these lawsuits so far that Oxford EMS is a public entity," said Joel Laird, an attorney for plaintiffs in both lawsuits. "So far, it's not being operated in compliance with the law, according to our position."

Maybe municipal, maybe not

Laird represents Ann Moody and Melissa Hall, former office managers for the service who were both fired after alleging misconduct by company management, according to suits Laird filed. Defense attorneys asked Circuit Judge Bud Turner to dismiss the case brought by Moody — who was also one of the company's three incorporators in 2009 — against the service's board of directors in a hearing Tuesday at the Calhoun County Courthouse.

During oral arguments, Birmingham attorney Wesley Redmond claimed immunity from some of the dozen counts leveled against Oxford EMS, declaring that the company is public.

"We've been very clear, we are a municipal corporation protected by statute," Redmond said. "We are performing a government function."

Laird said Wednesday that he had been surprised to hear what he called an admission. Hall filed suit in 2017 against the Oxford EMS board of directors for failing to advertise its meetings to the public, a requirement for public entities in Alabama's Open Meetings Act. Defense attorney Mark White, of White, Arnold & Dowd, called the company "a unique entity" during a hearing in that case, arguing that the ambulance service wasn't beholden to public meetings laws. The argument wasn't a linchpin in the case, which was later dismissed due to a lack of proof of harm on Hall's part.

Ted Copland, Hall's attorney at that time, criticized the characterization, noting that the company is partially funded by the city. White told Judge Brian Howell that about 15 percent of the company's budget came from the city of Oxford.

Laird said Oxford EMS as a branch of Oxford city government would change some elements of his case, including the rules around terminating employees, especially if the company was found to have fired Moody and Hall in retaliation for whistleblowing. He mentioned the possibility of filing an injunction to halt further appropriations to the company.

"It's still up to the judges in the cases as to what will happen," Laird said.

'Four magic words'

Members of the Oxford City Council said that the ambulance service is a non-government entity. After the appropriation meeting Monday, Councilman Steven Waits said the service is its own corporation, independent of the city when it comes to operations.

"We have no say-so in the running of EMS," Councilman Mike Henderson said Wednesday. "We want to separate ourselves entirely but we can't because of the way they're set up."

Henderson wasn't on the council when Oxford EMS reincorporated, he said, but his understanding is that part of the company's reorganization included two board appointments to be chosen by the city. The board appointments allowed Oxford EMS to offer its employees state retirement benefits through the Retirement Systems of Alabama, reserved for employees of the state and public bodies like municipalities.

City attorney Ron Allen said that Oxford EMS is a "separate and complete corporation from the city," and that the board appointments are the only connection between the two entities.

"How they elect to run the corporate entity and their operating procedures, we don't have a part in that," Allen said.

The ordinance that incorporated Oxford EMS in 2009 quotes a section of Alabama law authorizing municipalities to "create and establish, maintain and operate ambulance service within the county, or within the municipality," to promote the health and welfare of its residents.

That same section of Alabama law also allows cities to make appropriations to support the ambulance service.

Laird, though, said that statute doesn't necessarily allow the city to establish an ambulance service and allow it free rein to govern itself.

"There are four magic words in that section: create, establish, maintain and operate," he said.

Absorbing costs

A copy of the ambulance service's 2012 audit shows certified public accountant Joan Sanders, who then owned a CPA firm in Anniston, calling the firm a "component unit" of the city.

Sanders acknowledged the company's use of the public employee-only RSA retirement plan in her audit, which she noted includes "quasi-public organizations."

She wrote in an email to Anniston Chief Financial Officer Cory Salley in 2017 that Oxford EMS is "discretely presented as a proprietary fund of the City on the audited financial statements" and again called the company a "component unit" of the city.

Attempts to reach Sanders Wednesday were unsuccessful; she had sold her business, and a new one had taken its place, according to an employee there.

Henderson, however, said that he'd asked auditor Phil Bain, of Kemp & Associates, during an audit he performed last year whether Oxford EMS was a component unit of the city. Henderson said he'd been told it was not.

Attempts to reach Bain were unsuccessful Wednesday.

Allen said that the 2009 incorporation was before his time, but he said he believed the decision to incorporate was made to attract more employees to the service. The retirement plan, he said, would have been attractive. The city's continued support, he said, is meant to help residents when they have emergencies.

"It's absolutely imperative to have that kind of service," Allen said.

Henderson said he didn't want to chastise Oxford EMS, but allowed that something has to change. The city can't keep absorbing losses by making payments like the one approved Monday, he said.

"The budget surplus went from about $520,000 to around $300,000" Henderson said. "We're going to have to amend the budget for this."

*Assistant Metro Editor Ben Nunnally: 256-235-3560.*

Tags    | Emergency Medical Service | Company | Law | Work | Economics | Accounting | Board Of Directors |
        | Joan Sanders | Lawsuit | Employee | Corporation |

Ben Nunnally

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-getting-nothing-mor·
11ea-82a7-bf53bbb3ec77.html

# Oxford EMS getting nothing more from city

## Council declines vote on $300,000 per year addition



By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com

Nov 27, 2019

**OXFORD** — The city won't pay $25,000 per month to Oxford Emergency Medical Services, after a City Council resolution failed due to lack of support Tuesday night.

The city has poured money into the ambulance service in recent years, attempting to offset what the service has told city leaders is flagging income. Oxford's FY2020 budget already has $170,700 set aside for the agency, flagged to pay for maintenance, gas and oil for ambulances. Additional appropriations since January have totaled about $280,000. Council President Chris Spurlin said that Oxford EMS had complained it was losing money on a station in the Bynum area, which the city had requested be opened to support communities there. The $25,000 per month — $300,000 per year, on top of what is already in the city budget — would offset their losses, EMS leaders had said.

Spurlin moved to hold a vote during the council meeting, but the resolution failed due to lack of a second motion; no vote was held. The resolution had been on the consent agenda — generally considered to be noncontroversial items, voted on together at one time — before it was removed from that list during the council's pre-meeting work session.

Council members were more vocal than usual about the city's ambulance service issues during the work session. That may have been due to a lawsuit filed against Oxford EMS and the city Tuesday morning — one of several filed in the last two years — this time brought by Emergency Medical Billing, a Lafayette company that handled billing service for Oxford EMS. According to the suit, the ambulance service owes $30,201 for billing work from May to August of this year.

Joel Gregory, managing partner of Emergency Medical Billing, said by phone Tuesday afternoon that Oxford EMS had a pattern of difficulty paying its bills, stretching periods of nonpayment as long as four months.

Gregory said he'd met with Ricky Howell, Oxford EMS director, earlier this year. Howell had told him that the ambulance service would handle its own medical billing, Gregory said, and told Gregory "we are cash-strapped."

"Knowing Oxford EMS's revenue stream as well as we do, we're confused as to why they find themselves in their current situation," Gregory wrote in a separate, emailed statement.

Attempts to reach Ricky Howell, director of Oxford EMS, were unsuccessful Tuesday afternoon before the meeting.

Recent lawsuits have blurred the line between the organization and the city, with city leaders saying that the business is a private enterprise, while Oxford EMS attorneys argue that the nonprofit is an arm of the city, much like the fire or police departments. The service was founded in the 1970s and reincorporated by Oxford in 2009 to allow Oxford EMS to offer government retirement plans to its employees.

Council members were hesitant during the work session about spending more money. Spurlin said the service reported it was about $2,000 from breaking even in October; Councilwoman Charlotte Hubbard suggested that the service try to manage on its own before the city handed over more cash.

Councilman Mike Henderson seemed to have reached his limit Tuesday.

"You know the definition of insanity — doing the same thing over and over and expecting different results," said Henderson.

Of the council's five members, Henderson has been the most skeptical of the EMS service and how it spends city money in prior meetings. He reiterated his belief that the spending — which totals nearly $500,000 this year, including budgeted money — could cut into police and fire budgets, or cause other trouble.

He and other council members, including Mayor Alton Craft, agreed that an ambulance service is a necessity, and praised the medical staff of the Oxford EMS. Still, it's taxpayer money supporting what the city calls a private business.

"This is stupid, to keep giving them money and not hold them accountable for it," Henderson said. "We all know what the answer is and we're not willing to say it."

Oxford fire Chief Gary Sparks said the city owns the Bynum station, a former Oxford firehouse, and the only cost for EMS at the site is utilities. The service averages about 30 calls per day citywide, he said, including emergencies and patient transfers.

Discussion turned to the city taking over ambulance services; one problem is that the city paid for Oxford EMS's ambulances by issuing appropriations, Sparks said. Though the city paid for the vehicles, it doesn't and has never owned them, meaning it would need all-new trucks.

Craft said that if the city were to decide to let Oxford EMS fend for itself, it would have to do so with an alternate ambulance service at the ready.

"We'd have to let EMS know what we're doing, and I think they tell us they're good through December, probably," he said.

Spurlin noted that the service had recently made cuts; Sparks said the service cut back to three ambulances after laying off some of its EMT workers. Craft said he knew the service had also laid off administrative staff. Spurlin said the service will need time to see the effect of those cuts before more decisions can be made.

During its meeting, the City Council also:

— Agreed to pay Tuscaloosa web development firm The Nine for a new city website, which could roll department sites like those of the fire department and Choccolocco Park into one main web domain. The site's design and implementation will cost $25,000 total, with a $500 monthly fee for upkeep.

— Appointed Bill Bunn, Nancy Burnell, Robin Leonard, Leigh Ann Beshears, Lorraine Busby and Shawn Jones to the Keep Oxford Beautiful Board.

ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM McCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-appoints-new-ems-board-resignations/article_1478fcd2-3ca3-11ea-bc08-b3c9d4f45d33.html

[ FEATURED ]

# Oxford appoints new EMS board members after four resignations

By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com

Jan 21, 2020

PLAINTIFF'S
EXHIBIT
18



An Oxford EMS ambulance passes the station on U.S. 78 before pulling into the station.

(Kirsten Fiscus/The Anniston Star/file)

**OXFORD** — The City Council appointed new members to the Oxford Emergency Medical Service board of directors Tuesday, replacing several who had resigned.

Four members of the five-person board — chairman Greg Skinner, Randy Beshears, Patrick Miller and Shannon Stephens — resigned from their positions during the last few weeks, according to Chris Spurlin, president of the City Council. In a called meeting Tuesday morning, the council appointed replacement members who will finish the terms of the original four. Though Spurlin declined to comment on the resignations or their cause, he said the council is optimistic about the new appointees.

"Two of them have been paramedics there before and they've shown an interest in being sure Oxford EMS is run the best it can," Spurlin said. "One is a doctor, a chiropractor; all four said they would be interested in joining the board and they've got all that knowledge, so we were glad to have them."

James Slick and Leon McCall are both former Oxford EMS employees, Spurlin said. Trina Clark is a chiropractor and business owner in Oxford. Spurlin said he wasn't certain of Molly Denson's background.

Attempts to reach the former board members were unsuccessful Tuesday, with the exception of Miller, who declined to comment.

The service has had apparent financial difficulty over at least the last year, if not longer. The City Council recently voted down two requests from the service for $25,000 per month in public money, atop multiple, high-dollar appropriations each year and money already set aside in the city budget.

Employees of the service spoke out last month about Oxford EMS drawing money from paychecks to pay health insurance premiums and retirement contributions, but repeatedly failing to pay the money out. Employees worried they'd lose their vestment in the Retirement Systems of Alabama — a government-based retirement system for employees of public entities, like cities and counties — and dealt with rejected health insurance claims for weeks at a time.

Slick, one of the former Oxford EMS employees, appeared at a City Council work session in late November, when the council was to take up the first request for $25,000 per month from the service. Slick told council members that he started his career with Oxford EMS in 1985 and worked there for years, including a period as director. He said he believed the service was being mismanaged.

"To me it's just poor management, period," Slick told the council. "I think it's wrong from a citizen's standpoint. It's tax dollars, and it's going for what? Response times are not where they need to be."

Attempts to reach Slick on Tuesday were unsuccessful, as were attempts to reach McCall and Denson.

Clark, the Oxford chiropractor, said by phone Tuesday that she was looking forward to joining the board. She's originally from Alexandria, she said, though she left the state after chiropractic school to work with various practices. She recently opened a practice on Monger Street, she said, after returning to the area.

"I've either gone into new businesses and started them up, or built up failing practices," Clark said.

She'd been approached for her skill in restoring flagging medical businesses, she said, and believed the new board members could help get the service on track.

"It's a great asset for the city, and I hope that we can come in to turn it around and help save it," Clark said. "Keeping it local would be the best thing for Oxford. I'm glad they asked me to be a part of it."

*Assistant Metro Editor Ben Nunnally: 256-235-3560.*

Tags    Oxford   City Council   Economics   Politics   Work   Company   Commerce   Ems   Chris Spurlin   Employee
        Clark   James Slick   Board Member

## Ben Nunnally



ELECTRONICALLY FILED
7/10/2020 10:23 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM McCARSON, CLERK

https://www.annistonstar.com/news/oxford/oxford-ems-director-family-mem
ambulance/article_ae913ba8-3e34-11ea-80f7-0f8c6a714928.html

TOP STORY

# Oxford EMS director, family members no longer employed at ambulance service

By Ben Nunnally, Star Staff Writer, bnunnally@annistonstar.com
Jan 23, 2020

Ricky Howell, director of Oxford Emergency Medical Service, and two relatives were no longer employed by the service as of Wednesday.

"Yes they have been let go," wrote Marty Carter, the Oxford EMS chairman, Thursday in a text message. "This is not the first time we have let folks go. We cut six full-time positions a few months ago. We are reorganizing to make the agency financially viable."

Multiple attempts to reach Howell by phone Thursday were unsuccessful; calls went almost immediately to voicemail, and his voicemail inbox was full in the morning and afternoon. The service also had employed Howell's daughter and his ex-wife, who both worked in administrative positions.

The terminations followed the City Council's appointment of four new board members to the five-person Oxford EMS board Tuesday, after a weeks-long series of resignations that left the board with Carter as its sole member. The new members — James Slick, Leon McCall, Trina Clark and Molly Denson — replaced former chairman Greg Skinner, Randy Beshears, Patrick Miller and Shannon Stephens.

A City Council member said Tuesday that the board members had been chosen for their backgrounds; Slick and McCall are former Oxford EMS employees, and Clark said she's a chiropractor with a history of revitalizing failing medical practices. Clark said the new board had been tasked with making the service solvent again.

Oxford EMS has frequently approached the City Council for emergency funding in the form of high-dollar appropriations from the city's coffers; the council recently shot down a request for $300,000 per year paid out in monthly installments, and another request for $50,000 at

least through the end of January. Those denied requests were the end of frequent cash injections into the service, stretching back over the last few years, not including money set aside in the city budget each year.

Last month, employees of the service said Oxford EMS had withheld money from paychecks to pay health insurance premiums and retirement contributions, but repeatedly failed to make those contributions, leaving employees without insurance for themselves and their children for with several stretches.

High-stakes, high dollar industry

The changes at Oxford EMS will affect one small service in an industry with several kinds of providers — public, non-profit and commercial — who all depend on expensive equipment and on the complicated medical billing practices of insurance companies, Medicare and Medicaid in order to provide life-saving care.

Randy Childs, an assistant fire chief with the Jacksonville Fire Department — which runs the city's ambulance service — on Thursday explained in general some of the challenges that ambulance services face in maintaining solvency.

"You have to balance the price of the vehicles, price of supplies, the price of the equipment we put on them, and fuel costs," Childs said, listing just a few of the concerns EMS leaders must manage.

Paramedics have to be trained not only in saving lives, but in documenting how they go about doing it. Medicaid and Medicare have certain tiers of payout they'll provide for treatment, Childs explained, based on how advanced the care is.

"It's based on procedures, like if we have to give drugs, put someone on a monitor, if we have to give oxygen; all those procedures have to be well-documented," he said.

Improperly documenting care could mean losing out on some of the payment, money that the service won't have to put back into its payroll, maintenance and other overhead costs.

Equipment is expensive, he pointed out; heart monitors are $35,000 each. Stretchers aren't just wood and canvas — they're heavy-duty machinery, with a price tag to match.

"Just to have the equipment on the ambulance is an enormous cost," Childs said. "Then you've got billing, insurances ..."

Finally, some people aren't insured, and some can't afford to pay the costs associated with ambulance care and transport. Jacksonville's ambulance service works with a billing company to handle collecting payment, and the city works with its residents to make payment plans, Childs said, but sometimes it doesn't work out. Some accounts become write-offs, money that will never be collected.

Jacksonville's ambulance service — its Fire Department — works with the City Council and other city departments to manage administration. Finance is handled by the Finance Department; the city puts ambulance service in its budget, Childs said.

"It's definitely a monthly issue we have to evaluate," Childs said.

*Assistant Metro Editor Ben Nunnally: 256-235-3560.*

Tags    Ems    Randy Childs    Ambulance    Economics    Company    Work    Commerce    Finance    Trina Clark    Employee    Medicare    Medicaid

Ben Nunnally





**AlaFile E-Notice**

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: L. CHRIS GODWIN
claimdocs@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**
**C002 HOWELL HEATHER**
**C003 LEWIS WENDY**
RECUSAL

[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date: 7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00
Judge: DEBRA H JONES

To:  BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**
**C002 HOWELL HEATHER**
**C003 LEWIS WENDY**
RECUSAL
[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date:     7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**

**C002 HOWELL HEATHER**

**C003 LEWIS WENDY**

RECUSAL

[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date:     7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00
Judge: DEBRA H JONES

To: ODOM JASON CLAUDE
jcodom@odomlegal.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**
**C002 HOWELL HEATHER**
**C003 LEWIS WENDY**
RECUSAL

[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date:     7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/10/2020 10:23:14 AM

**C001 HOWELL RICKY LEVERAL**

**C002 HOWELL HEATHER**

**C003 LEWIS WENDY**

RECUSAL

[Filer: GODWIN LEWIS CHRISTOPHER]

Notice Date:     7/10/2020 10:23:14 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition: OTHER
Judge: DHJ

Notice Date: 7/13/2020 10:25:22 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov

ELECTRONICALLY FILED
7/13/2020 10:25 AM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | |
|---|---|
| HOWELL RICKY LEVERAL, | ) |
| HOWELL HEATHER, | ) |
| LEWIS WENDY, | ) |
| Plaintiffs, | ) |
| | ) |
| V. | ) Case No.:    CV-2020-900287.00 |
| | ) |
| CITY OF OXFORD, ALABAMA, | ) |
| OXFORD EMERGENCY MEDICAL | ) |
| SERVICES, INC., | ) |
| Defendants. | ) |

## ORDER SETTING HEARING

RECUSAL AND TRANSFER filed by HOWELL RICKY LEVERAL, HOWELL HEATHER and LEWIS WENDY is hereby set for hearing July 16, 2020 at 10:30 a.m. in courtroom 250.

**DONE this 13th day of July, 2020.**

/s/ DEBRA H JONES
CIRCUIT JUDGE



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: GODWIN LEWIS CHRISTOPHER
claimdocs@gmail.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/13/2020 10:25:22 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: BUTLER JAMES DWIGHT
jamesbutlerlaw47@gmail.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition:    OTHER
Judge:          DHJ

Notice Date:    7/13/2020 10:25:22 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: STUBBS CHARLES DAVID
david-ssf@cableone.net

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/13/2020 10:25:22 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: ODOM JASON CLAUDE
jcodom@odomlegal.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition: OTHER
Judge: DHJ

Notice Date: 7/13/2020 10:25:22 AM

.

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

11-CV-2020-900287.00

Judge: DEBRA H JONES

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

A court action was entered in the above case on 7/13/2020 10:25:22 AM

ORDER

[Filer: ]

Disposition:     OTHER
Judge:           DHJ

Notice Date:     7/13/2020 10:25:22 AM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov



AlaFile E-Notice

To: UMBACH ARNOLD WILLIAM III
awu@starneslaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

RICKY LEVERAL HOWELL ET AL V. CITY OF OXFORD, ALABAMA ET AL
11-CV-2020-900287.00

The following matter was FILED on 7/13/2020 12:52:56 PM

**D001 CITY OF OXFORD, ALABAMA**

RECUSAL

[Filer: STUBBS CHARLES DAVID]

Notice Date:     7/13/2020 12:52:56 PM

KIM MCCARSON
CIRCUIT COURT CLERK
CALHOUN COUNTY, ALABAMA
25 WEST 11TH STREET
ANNISTON, AL, 36201

256-231-1750
Kim.McCarson@alacourt.gov


ELECTRONICALLY FILED
7/13/2020 12:53 PM
11-CV-2020-900287.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
KIM MCCARSON, CLERK

## IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

| | | |
|---|---|---|
| RICKY HOWELL, HEATHER HOWELL, and WENDY LEWIS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NUMBER: 11-CV-2020-900287 |
| OXFORD EMERGENCY MEDICAL SERVICES, INC., and CITY OF OXFORD, | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT CITY OF OXFORD'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECUSAL AND TRANSFER OF VENUE

Comes now the Defendant, City of Oxford, Alabama, and files this response in opposition to the plaintiffs' motion for recusal and transfer of venue, as follows:

First, as to the plaintiffs' request for recusal, they have not met their burden of pleading, much less proving, any basis for recusal. Plaintiffs make no specific allegations of bias or any other allegation of lack of impartiality against the Judge actually assigned to the case (the Honorable Debra H. Jones), nor do they offer any supporting details or facts to support any claim that Judge Jones' recusal is necessary or even desirable. Instead, they merely point to relationships that various parties to this litigation have with other Calhoun County judges or those judges' relatives, and seem to be trying to impute some sort of disqualification to Judge Jones solely on that basis, without actually arguing that Judge Jones has any such relationship or relationships with any party that calls her impartiality into question. (See Doc. 24, at ¶¶ 28-30.)

Recusal is not required by mere accusations without proof of supporting facts.[1] "The burden is on the party seeking recusal to present evidence establishing the existence of bias or

---

[1] Acromag-Viking v. Blalock, 420 So. 2d 60 (Ala. 1982); Miller v. Miller, 385 So. 2d 54 (Ala. Civ. App. 1980); Bryars v. Bryars, 485 So. 2d 1187, 1189 (Ala. Civ. App. 1986).